TAYLOR AVENUE IMPROVEMENT ASS'N *v.* DETROIT
TRUST CO.

1. EQUITY—LACHES—COVENANTS—RESIDENCE AND BUILDING SET-
BACK RESTRICTIONS.
    Claim of laches on part of plaintiffs in bringing suit to enforce
    residence and building setback restrictions on subdivision, con-
    sisting of but 98 lots abutting one side or the other of a single
    street for distance of three blocks, against parties proposing to
    build a gasoline station *held,* without force where suit was
    started with reasonable promptness.

2. COVENANTS—BUILDING RESTRICTIONS—TEMPORARY STRUCTURES—
PERMANENT COMMERCIAL BUILDINGS—WAIVER.
    Fact that owners of lots in a subdivision, restricted to use for
    residential purposes, have permitted erection of signboards
    which are relatively temporary *held,* insufficient to constitute
    waiver of right to prevent construction of permanent buildings
    devoted to commercial purposes.

3. JUDGMENT—RES JUDICATA—SUBJECT-MATTER—PARTIES.
    Dismissal, with prejudice, of former suit to enforce restrictions
    on lot in same subdivision across street from one involved in
    instant case and owned by same defendants cannot operate as
    bar to instant suit where several parties plaintiff herein were
    not parties of former suit.

4. COVENANTS—ENFORCEMENT OF RESTRICTIONS.
    Decisions in suits to enforce restrictions depend entirely upon
    the facts in each particular case.

5. SAME—CHANGE IN CHARACTER OF NEIGHBORHOOD—RELIEF FROM
RESTRICTIONS.
    Relief from very onerous restrictions because of a change in the
    character of the neighborhood will be granted only if it can be
    done without causing any damage to others who have pur-
    chased their property in the restricted area in reliance on the
    restrictions, but restrictions will be modified where there has
    been such a change in a neighborhood that the modification
    will not damage owners of other lots in the subdivision.

6. SAME—ABANDONMENT OF RESTRICTIONS—EVIDENCE.

 Frequent violations of a restriction, unobjected to, are indicative of an abandonment of such restriction.

7. SAME—ABANDONMENT—OCCASIONAL AND REMOTE VIOLATION OF RESTRICTIONS.

 Occasional violation of a restriction in a more remote portion of a street in a restricted subdivision does not preclude one from complaining of a nearer violation and does not operate as a general abandonment of the restrictions.

8. SAME—RESTRICTION OF BENEFIT TO OBJECTOR—ESTOPPEL.

 Usually a restriction will be upheld wherever it remains of any substantial benefit to parties objecting to its violation provided they are not estopped by their conduct from making such objection.

9. SAME—MODIFICATION OF USE RESTRICTION—GASOLINE STATION ON PORTION OF END LOT OF SMALL RESIDENCE SUBDIVISION—SETBACK LINE.

 In suit by owners of lots in a subdivision three blocks long, containing but 98 lots all abutting one side or the other of one street, which lots were restricted to use for residence purposes and whereupon it was required that front line of house be set back 25 feet from front line of lot, against owners of 200-foot lot at end of subdivision to restrain use of 60 feet of lot at end of street, where it intersects with a main traffic artery, for gasoline station purposes, restriction is modified to permit erection of gasoline station on such portion of end lot otherwise surrounded by property used for non-residential purposes where nearest plaintiff is separated from 60-foot parcel by an alley and 140 feet of unoccupied land in balance of lot and plaintiffs do not show they are substantially affected by presence of the gasoline station set back 25 feet from street on land not remotely desirable for dwelling house purposes.

Appeal from Wayne; Toms (Robert M.), J. Submitted January 5, 1938. (Docket No. 30, Calendar No. 39,765.) Decided February 24, 1938.

Bill by Taylor Avenue Improvement Association, a voluntary unincorporated association, and others against Detroit Trust Company, trustee under will of DeWitt H. Taylor, and others for a mandatory

injunction to enforce building restrictions. Decree for plaintiffs. Defendants Detroit Trust Company, DeWitt E. Taylor, Charles E. Austin and Sunny Service Oil Company, Inc., appeal. Modified and affirmed.

*Stanley E. Beattie,* for plaintiffs.

*Harold A. Sleeper,* for defendants Detroit Trust Company and Taylor.

*Anderson, Wilcox, Lacy & Lawson* (*Harold A. Sleeper,* of counsel), for defendants Austin and Sunny Service Oil Company, Inc.

BUTZEL, J. DeWitt H. Taylor subdivision of lot 7 and the southerly part of lot 8, quarter section 45 of the 10,000-acre tract in Detroit, Michigan, runs the length of three blocks from Woodward avenue to Hamilton boulevard and consists of only 98 lots, all abutting either on the north or the south side of Taylor avenue. Lots 1 and 98 are situated respectively at the northwest and southwest corners of Taylor and Woodward avenues, each lot having a frontage of 200 feet on Taylor avenue. During his lifetime, DeWitt H. Taylor, the subdivider, executed and caused to be recorded an instrument, dated May 28, 1907, restricting all lots to residential purposes and providing that only a single dwelling house at least two stories in height and necessary outbuildings could be erected on the lots; that the front line of each house should be no less than 25 feet from the front line of the lot; that no other obstruction to the view except trees should be placed in front of the building line; that the grade from the sidewalk to the building line should be 6 inches to every 10 feet; and that no dwelling should be erected between

Woodward and Second avenues costing less than $5,000. It is conceded that both lots 1 and 98 were so restricted.

Defendants Detroit Trust Company, as trustee, and DeWitt E. Taylor, son and heir of the original subdivider, are owners of lots 1 and 98. On May 15, 1935, they leased a portion of lot 98, having a frontage of 90 feet on Woodward avenue and 60 feet on Taylor avenue to defendant Charles E. Austin, who sublet to the defendant Sunny Service Oil Company. Notwithstanding the restrictions, some of the defendants proceeded to erect an oil station fronting on Woodward avenue on lot 98 and plaintiffs, with a reasonable degree of promptness, brought suit to enforce the restrictions. There is no force to defendants' claim of laches. Plaintiffs petitioned for a mandatory injunction ordering the removal of the gasoline station and restraining further use of the premises for the business of servicing automobiles and selling gasoline or oils. The lower court granted a decree holding that the restrictions were still in force and ordering removal of the oil station.

Defendants contend that plaintiffs have waived their right to enforce the restrictions by permitting the maintenance of large illuminated signboards on lots 1 and 98 for a period of several years; that a former suit involving the restrictions on lot 1 was a former adjudication of the rights involved in this suit; and that, in any case, the conditions of the neighborhood on Woodward avenue, both in the immediate vicinity and for the entire distance of a mile south and at least a block north of the subdivision, have become so devoted to non-residential purposes as to make the restrictions obsolete, oppressive, of no value, and therefore unenforceable in equity.

Irrespective of whether the maintenance of the signboards was a breach of the restrictions, such structures are relatively temporary, and permitting them to remain will not be considered a waiver of the right to prevent the construction of permanent buildings, devoted to commercial purposes. *Sanders* v. *Campbell*, 231 Mich. 592; *Austin* v. *Van Horn*, 245 Mich. 344.

A former suit to enforce the restrictions on lot 1 was dismissed by the trial court with prejudice, but that adjudication cannot be a bar to this suit because several of the parties plaintiff herein involved were not parties to that former suit.

Defendants' main contention is that the neighborhood surrounding the corner lots has changed and become so devoted to non-residential purposes that an enforcement of the restrictions under the circumstances would be inequitable and destructive of the entire value of their property.

We are much impressed with the equities of the situation. As has been frequently stated, decisions in restriction cases depend entirely upon the facts in each particular case. The subdivision is only one street wide. Immediately to the north of lot 1, on Woodward and Clairmount avenues, are stores and other commercial structures. Immediately to the south of lot 98 on Woodward and Hazelwood avenues are a used-car lot, a gasoline station, a bank and an apartment house. The northwest corner of Woodward and Hazelwood was partly relieved of restrictions in *Putnam* v. *Ernst*, 232 Mich. 682. On the east side of Woodward avenue, opposite the end of Taylor avenue, are various non-residential structures. There is a double street car track on Woodward avenue and, with very few exceptions, its entire length to Clairmount avenue is given over to

non-residential buildings. Lots 1 and 98 in this narrow subdivision are flanked on both sides by Woodward avenue lots not similarly restricted, and the Woodward avenue frontage of both lots is not even remotely desirable for dwelling house purposes. If the restrictions are maintained, the lots will be of but little value to defendants.

Relief from very onerous restrictions because of a change in the character of the neighborhood will be granted only if it can be done without causing any damage to others who have purchased their property in the restricted area in reliance on the restrictions. We have neither the disposition nor the right to lift or modify restrictions at the expense of or to the damage of any other property holder in the subdivision. The query is, whether these restrictions can be modified in such a manner so that in this particular instance no damage is done to the residents of Taylor avenue.

In the case of *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich. 625, we refused to remove the restrictions and enjoined the construction of an office building fronting on Hamilton boulevard, notwithstanding that to a limited extent the character of Hamilton boulevard had changed in certain districts into a business street. It was shown, however, that the lot was situated in a subdivision which included five contiguous restricted blocks fronting on Hamilton boulevard and which had remained strictly a residential neighborhood, there always having been a compliance with the restrictions. In the present case, we have only a small subdivision, the lots of which all abut on Taylor avenue, the Woodward avenue frontage being surrounded on three sides by non-residential structures. In the case of *Polk Manor Co.* v. *Manton,* 274 Mich. 539, we

enforced a restriction because the property directly opposite the lot in question was improved with a large and very costly apartment house. It was shown that the presence of the gas station would substantially injure the value of the apartment house. The owners had a right to the enforcement of the restrictions. In *Wineman Realty Co.* v. *Pelavin,* 267 Mich. 594, it was shown that the encroachments of business had not reached the vicinity of that part of Dexter boulevard where plaintiff had erected an apartment house.

On the other hand, we have not refused to modify restrictions where there has been a change in a neighborhood to such an extent that the modification will not damage the owners of the other lots in the subdivision. *Windemere-Grand Improvement & Protective Ass'n* v. *American State Bank of Highland Park,* 205 Mich. 539; *Frigo* v. *Janek,* 237 Mich. 642; *Austin* v. *Van Horn,* 255 Mich. 117; *Golden* v. *Davis,* 266 Mich. 7.

The situation in the present case is peculiar. It is claimed that some of the plaintiffs are not damaged because, as stated in *Golden* v. *Davis, supra,* they reside such a distance from the lot in question that they could not suffer more than a nominal injury, if any. A lot improved with a residence, owned by one of the plaintiffs in the instant case, is separated from lot 98 only by an alley. There is no question but that at present the owners of the homes abutting or near lot 98 would be seriously damaged if any violation of the restrictions by a non-residential use of the property immediately across the alley would be permitted. The rear of such a non-conforming structure would be immediately opposite the conforming homes and the owners thereof would have much of their privacy destroyed thereby. From the side of their homes or even from diagonally across

the street, the outlook would be upon the unsightly rear of the non-conforming building. Owners nearby would be inconvenienced by the noise, dirt, and congestion of vehicular traffic along the side or in the rear of the non-conforming property. Also see *Polk Manor Co.* v. *Manton, supra.* We have held that frequent violations of a restriction, unobjected to, are indicative of an abandonment of such restrictions, but in *Voorheis* v. *Powell,* 261 Mich. 378 (85 A. L. R. 932), we again announced the principle that an occasional violation of a restriction in a more remote portion of a street in a restricted subdivision does not preclude one from complaining of a nearer violation and does not operate as a general abandonment of the restrictions. As a rule, we will uphold a restriction wherever it remains of any substantial benefit to the parties objecting to its violation, provided they are not estopped by their conduct from making such objection.

The use of the premises objected to by plaintiffs actually involves only the easterly 60 feet of lot 98 fronting on Woodward avenue. The gasoline station is separated from the nearest lot owned by one of the plaintiffs by an alley and 140 feet of unoccupied ground. The evidence makes it reasonably apparent that in spite of the noise and other disturbances possibly arising from the operation of the gasoline station, the inconvenience to plaintiffs will not be appreciably increased over that already caused by the street cars, traffic, school children, and the many businesses lawfully occupying Woodward avenue and the surrounding streets in the immediate vicinity. Plaintiffs do not show that they are substantially affected by the presence of the gasoline station or will be substantially benefited by its removal.

However there is no question but that these restrictions are still of some value to plaintiffs in preventing the approach of commercial operations to a point where the injury will be more than nominal. While the case of *Putnam* v. *Ernst, supra,* differs in its facts from the present case, the chancellor in balancing the equities held that because of the change in the character of the streets in the immediate vicinity of Hazelwood avenue, he would permit the use of the easterly 50 feet of the lot for business purposes, provided, however, that the lot line on Hazelwood avenue be preserved and no business be permitted to be done on or through the Hazelwood avenue frontage. It is true that no appeal was taken by the owners of the adjoining properties from this decision, but we deem it an essentially fair and equitable one. Equity can be done without damaging plaintiffs by relieving a part of lot 98 from onerous restrictions to a limited extent. It is only because of the fact that lots 1 and 98 are owned by the same parties defendant; because the subdivision is a small one with the frontage on Woodward avenue in the immediate vicinity being used for non-residential purposes; because this decision in no way affects the rear 140 feet of lot 98 or of lot 1 across the street, and because of the further fact that we expressly stipulate that the northerly 25 feet of lot 98 may not be built upon, that we come to our conclusion. The set-back line of 25 feet on Taylor avenue must be rigidly observed so that the owners of all the lots on Taylor avenue may continue to have their view unobstructed for the entire length of the street. The decree of the lower court will be so modified as to permit the building and operation of a gas station on lot 98 for a distance of not more than 60 feet west from the lot line on

Woodward avenue, but no buildings, pumps, appurtenances and signs shall be permitted to remain less than 25 feet south of the lot line on Taylor avenue. The present structure on lot 98 must be moved so as to conform with this opinion.

The decree of the lower court, as modified, is affirmed, with costs to plaintiffs.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.