AVERY *v.* EDDY PAPER CORP.

1. WORKMEN'S COMPENSATION—CANCELLATION OF FINAL SETTLEMENT RECEIPT—FRAUD.

In suit to cancel a final settlement receipt for workmen's compensation, alleged to have been procured by fraud, court is primarily concerned with whether record supports finding that statements were made by doctor who performed operation for hernia which were untrue, perhaps carelessly rather than fraudulently, and that such misstatements were the inducing cause in consequence of which plaintiff. did sign the receipt about two months after the operation had been performed.

2. SAME—HERNIA—FINAL SETTLEMENT RECEIPT—FRAUD—EVIDENCE.
   In employee's suit to cancel a final settlement receipt which he
   asserted he had been fraudulently induced to sign after opera-
   tion for hernia, evidence that both plaintiff and the em-
   ployer's safety director acted upon advice of doctor, em-
   ployed by defendant to perform the operation, who stated
   plaintiff should sign the receipt but who knew then that
   plaintiff was not employable by a new employer or by the
   same employer at the same work *held,* sufficient to sustain
   decree cancelling the receipt notwithstanding plaintiff had
   signed such a receipt for a previous injury and hesitated a
   few days after presentation of instant receipt.

3. EQUITY — LACHES — PREJUDICE — OTHER LITIGATION BETWEEN
   SAME PARTIES.
   Plaintiff was not guilty of laches in not commencing suit to
   cancel a final settlement receipt for workmen's compensation
   until about a year and a half after he must have had full
   knowledge of all the matters constituting defendant's alleged
   fraud in procuring such receipt where there is no showing
   that the delay has occasioned any prejudice to defendant and
   it appears plaintiff had petitioned for further compensation
   which was denied because of the uncancelled receipt involved
   herein.

Appeal from Allegan; Miles (Fred T.), J. Sub-
mitted June 4, 1940. (Docket No. 11, Calendar No.
41,100.) Decided November 13, 1940. Rehearing
denied February 7, 1941.

Bill by George H. Avery against Eddy Paper
Corporation, an Illinois corporation, to set aside a
final settlement receipt and for further compensa-
tion. Receipt set aside, and cause remanded to
department of labor and industry for further pro-
ceedings. Defendant appeals. Affirmed.

*Harry Pell,* for plaintiff.

*Victor E. Bucknell,* for defendant.

NORTH, J. Plaintiff filed a bill of complaint alleg-
ing that he had been fraudulently induced to sign a
final settlement receipt incident to his right to receive

compensation from the defendant in whose employ plaintiff had suffered a compensable injury. The case was brought to issue by defendant's answer, heard in the circuit court, and a decree entered granting the relief prayed. Defendant has appealed, claiming that the testimony does not sustain the conclusion of the circuit judge that the receipt, subsequently approved by the department of labor and industry, was obtained through fraud which justified the court's decree cancelling the approved receipt.

Plaintiff was employed by defendant in the spring of 1937. Shortly thereafter he suffered a compensable injury, received compensation for a time, and upon full recovery he executed a final settlement receipt. He returned to his employment with defendant, and again on September 27th, while working as a millwright, he suffered a compensable injury, designated as "double hernia." He received compensation and, under arrangements made by his employer, plaintiff submitted to an operation, October 5, 1937. While plaintiff was recuperating and still absent from his employment, Mr. Cahill, defendant's safety director in charge of work in connection with injured employees, requested plaintiff to return for examination to the office of Doctor Shackleton who had performed the operation. Plaintiff visited the doctor's office on November 27th and was examined by the doctor. It is a fair inference from the record that prior to this date Mr. Cahill had prepared a final settlement receipt and left it with Doctor Shackleton for the purpose of securing plaintiff's signature thereon. After examining plaintiff, the doctor told him he had recovered, that he was "perfectly all right and ready to go to work;" but plaintiff claimed he had not recovered and complained of pain and an inability to return to his employment. The doctor told plaintiff that this

was in his head, or a matter of imagination. Plaintiff refused at the doctor's office to sign the receipt, which recited "I have fully recovered from all disability on account of this accident. I returned to work on the 1st day of December, 1937, at a wage of $24 per week."

Notwithstanding plaintiff, on November 27, 1937, refused to sign the receipt which obviously contained untrue statements as to re-employment, et cetera, nevertheless early in December he did report to Mr. Cahill's office and there did sign the receipt. We think the record sustains the following from the circuit judge's opinion concerning this and subsequent events:

"Just what conversation was had between plaintiff and Mr. Cahill at the time the receipt was signed is in dispute. Evidently both plaintiff and Mr. Cahill relied on the doctor's statement that plaintiff was or should be able to return to work 'at light work,' although plaintiff still complained of pain. On the day the receipt was signed plaintiff was referred to Mr. Anable, the foreman of the department where he (plaintiff) had formerly worked. He went to Mr. Anable, who inquired of his health, and plaintiff told him that he still suffered pain, and some disability; Mr. Anable suggested that he return in a couple of weeks. After two weeks he went again and Mr. Anable suggested he return January 3d. Not feeling able on January 3d, he did not go back until January 5, 1938. What occurred at that time is in dispute. Plaintiff says that Mr. Anable was very kind about it but explained that he was unable to re-employ him; Mr. Anable thinks that he told him that he would not take him back because he could not depend on him. * * * Certain it is that plaintiff was not reemployed by defendant."

Plaintiff sought other employment; and on February 5, 1938, he again went to see Doctor Shackleton. Plaintiff claims the purpose of this visit was

that the doctor should make an examination of him for employment by the Consumers Power Company. Concerning this visit the doctor testified:

"*Q.* What did he come to your office for on that date (February 5th)?

"*A.* He was complaining of pain low down on the left side of the incision.    \*    \*    \*

"*Q.* What did you tell him?

"*A.* He told me that he had been examined for occupation by the Consumers Power Company and that they had turned him down, and I told him that was perfectly proper, that any firm who was taking— who examined their employees prior to hiring them would be very foolish to take on a new employee inside of a year after an operation had been done."

Plaintiff testified he asked Doctor Shackleton if he would pass plaintiff's physical examination so that he might go to work for the Consumers Power Company; and that the doctor said "No;" and further: "He (Doctor Shackleton) said that there was no company that would hire me for at least a period of a year and a half or two years."

This record clearly discloses that in whatever Doctor Shackleton said or did he was acting for and in behalf of the defendant company. On this appeal we are concerned with whether the testimony sustains the circuit judge in his determination that prior to the signing of the settlement receipt Doctor Shackleton made statements to plaintiff which were untrue, although such statements may have been carelessly rather than fraudulently made; and whether such misstatements (in the light of Mr. Cahill's attitude concerning the signing of the receipt) were the inducing cause in consequence of which plaintiff did sign the receipt. As bearing upon this phase of the controversy we quote the following from plaintiff's testimony:

"I told him (Doctor Shackleton—at his office) it was even hard for me to get up out of a chair and stand straight at that time.

"He said it was all in my head. * * * Dr. Shackleton said I was able to go back to work, and I claimed I wasn't, with the pain, that I had. * * *

"He (Doctor Shackleton) said that was a natural feeling, or that that soreness would be there, and the numbness and that, would be there for some time. * * *

"Sometime after the 1st of December, * * * I saw Mr. Cahill and told him how it was, and I told him that I didn't feel I was able to go to work. He said it was one of two things. I would either have to sign that (settlement receipt) or they would force me to sign it. * * *

"Q. Now I ask you whether or not on the 27th of November, and this time early in December, Dr. Shackleton didn't tell you that you were perfectly all right and ready to go to work; that you were able to work? * * *

"A. Yes, he said he couldn't find anything— again he told me it was only in my head, he said it was absurd, that it couldn't be anything wrong. I would not have signed the settlement receipt if they hadn't told me it was all right. * * *

"Mr. Anable never made any offer to put me to any kind of work. * * *

"The statements that Mr. Cahill and Dr.—the doctor made in regard to my condition, induced me to sign the settlement receipt. I gave them credit for knowing more about it than I did. * * *

"Q. When you signed the final settlement receipt you thought you had recovered?

"A. No, sir; I merely took Dr. Shackleton's word for it. * * *

"Dr. Shackleton convinced me I was able to go to work on the 1st day of December. The argument about signing the settlement receipt had all been about whether I was able to go to work. I took his word for it that I was a perfectly well man."

In view of the foregoing and other portions of the record which sustain the conclusion that plaintiff had not recovered, we would not be justified on this appeal in disturbing the determination of the circuit judge. In so concluding we are mindful of phases of the record stressed by appellant, including the fact that plaintiff has a fairly liberal education, that on one former occasion he had signed a settlement receipt, and that he testified: "I understood that the receipt says that I have fully recovered from my injuries." The record sustains the following finding of the circuit judge, referring to Doctor Shackleton: "He did tell the plaintiff that he had fully recovered and should sign the final settlement receipt, and presented the same for his signature; he knew at the time that the man was not employable by a new employer, or even by the same employer at the same work."

There is no merit to appellant's contention that because plaintiff must have had full knowledge as early as December, 1937, or early in January, 1938, of all of the matters of which he now complains and did not institute this suit until June 22, 1939, he is guilty of laches which bars recovery. There is no showing that delay in bringing suit has occasioned any prejudice to defendant. *Sanders* v. *Campbell,* 231 Mich. 592; *Taylor Avenue Improvement Ass'n* v. *Detroit Trust Co.,* 283 Mich. 304. And, further, in this connection it may be noted that in the meantime plaintiff had petitioned for compensation, but on March 8, 1939, was denied compensation because of the uncancelled final settlement receipt involved in this suit.

The decree of the circuit judge is affirmed, with costs to appellee.

BUSHNELL, C. J., and SHARPE, CHANDLER, McALLISTER, WIEST, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.