CAREY v. LAUHOFF.

1. INJUNCTION—COVENANTS.
    In suits to enjoin violation of restrictive covenants upon use of land, each case must be determined on its own facts.

2. COVENANTS—CONSTRUCTION.
    Restrictions are not favored in law and will be construed as found.

3. SAME—RESTRICTION OF BENEFIT TO OBJECTOR—ESTOPPEL.
    Usually a restriction will be upheld wherever it remains of any substantial benefit to parties objecting to its violation provided they are not estopped by their conduct from making such objection.

4. SAME—PUBLIC POLICY—COURTS.
    It is the policy of the courts to protect property owners who have not themselves violated restrictions in the enjoyment of their homes and holdings, free from inroads by those who

attempt to invade restricted residential districts and exploit them under some specious claim that others have violated the restrictions, or business necessities nullified them.

5. SAME—RESTRICTIONS—UNIFORMITY—GENERAL PLAN.

Restrictions need not be uniform nor follow a general plan to the extreme, but the common grantor can release certain lots and vary the restrictions.

6. INJUNCTION—ROOMING HOUSE—RESIDENTIAL NEIGHBORHOOD.

Fact that some businesses have been established in neighborhood would not preclude plaintiffs therein from enjoining defendant from establishing a rooming house where there is no outward appearance showing or tending to show that the street has changed in character from a strictly high-class residential one to a business or rooming-house section nor prevent plaintiffs from taking steps to check a further or a different violation of restrictive covenants.

7. SAME—ROOMING HOUSE—PREVIOUS VIOLATIONS OF BUILDING RESTRICTIONS.

Fact that there may be 23 violations of building restrictions in subdivision composed or approximately 189 lots would not necessarily establish waiver or estoppel against plaintiffs, other property owners therein, from enjoining defendant from establishing a rooming and boarding house.

8. COVENANTS—EQUITY—WAIVER—SUBVERSION OF ORIGINAL SCHEME OF DEVELOPMENT.

Even after one or more breaches, equity will not refuse relief if the restrictive covenants can be shown to be valuable to complainant and successive violations do not appear to have resulted in a subversion of the original scheme of development, so as to alter substantially the character of the neighborhood.

9. SAME—CHARACTER AND NUMBER OF VIOLATIONS—WAIVER.

The character, as well as the number, of claimed violations must be considered in determining whether complaining property owners have waived or forfeited the benefit of a restriction.

10. INJUNCTION—ESTOPPEL—VIOLATION OF BUILDING RESTRICTION—ROOMING HOUSE.

Injunctive relief against violation of covenant in deed of lot restricting use of property therein to single dwelling house by defendant who sought to establish a rooming and boarding house thereon was not precluded on ground of waiver or

estoppel by reason of the fact that in some two or three instances parties in the same block in high-class residential neighborhood may have rented one or two rooms.

11. Same—Violation of Building Restriction—Laches.

Defendant who purchased house and lot in high-class residential neighborhood on land contract with full knowledge of restriction against use for other than single dwelling house purposes and who received notices before and after such purchase warning her of possible litigation to prevent violations cannot successfully assert defense of laches in suit to enjoin violation brought 46 days after such purchase.

12. Covenants—Single Dwelling House—Rooming House—Other Violations.

Fact that purchaser of residence in a high-class residential neighborhood subject to restrictions of record to use for single dwelling house purposes had occupied place for period of several years terminating three years before purchase was made and had then maintained a rooming and boarding house and that there had been some other violations in the subdivision did not justify her in then purchasing premises with the avowed purpose of breaching the restriction in her contract of purchase.

13. Equity—Delay—Laches—Prejudice.

Delay in asserting a right does not in.itself constitute laches as the delay must have resulted in some prejudice to the party asserting laches which would make it inequitable to disregard the lapse of time and incidental consequences.

14. Appeal and Error—Diligence—Evidence.

In suit to enforce building restriction as to use of lots in subdivision for single dwelling houses only, admission in evidence of letters between parties other than defendant for purpose of showing diligence on part of plaintiffs in protesting and seeking to prevent breaches of restrictions and obviously not for showing contents thereof was not prejudicially erroneous.

Appeal from Wayne; Smith (Frank Day), J. Submitted January 6, 1942. (Docket No. 13, Calendar No. 41,628.) Decided March 17, 1942.

Bill by Matthew Carey and others against Gertrude Lauhoff to enforce building restrictions. Seyburn Avenue Association intervened as party plain-

tiff. Decree for plaintiffs. Defendant appeals. Affirmed.

*Leonard F. Donaldson,* for plaintiffs.

*Walter Schweikart* and *Julien Winterhalter,* for defendant.

NORTH, J. On March 7, 1940, defendant Gertrude Lauhoff bought on contract the property located at 1458 Seyburn avenue, Detroit, Michigan, for the purpose of operating a rooming house. It is admitted her land contract contained the following restriction:

"No building except a single dwelling house costing not less than $2,500 and to be placed not nearer than 20 feet to the front line of said lot, together with the necessary outbuildings going with it, shall be erected or maintained upon the premises herein described."

Restrictions of somewhat similar purport were included in the deeds from the subdivider to the various grantees. On March 12, 1940, defendant received a letter from an attorney for plaintiffs, land owners in the subdivision, which warned her of the restriction and threatened legal action unless she complied with it. She had also received a notice of like character at an earlier date. On April 22, 1940, plaintiffs Carey, Buell and McEnally brought suit to enforce the restriction; and on June 28, 1940, the Seyburn Avenue Association obtained leave to intervene as a party plaintiff. In the trial court plaintiffs were decreed relief. Defendant has appealed.

On the facts as above stated, it would seem that plaintiffs have a clear right to enforce the restriction. However, defendant pleaded the usual de-

fenses in restriction suits, *i. e.*, changes in neighborhood, and waiver or laches. Relative to changes in neighborhood, defendant stresses four aspects of this record: "First, the restrictions imposed upon the subdivision were not uniform; second, a general plan of development was not maintained; third, commercial establishments have been permitted; and fourth, rooming houses have been established for a long time." Under the defense of waiver or laches, the claim is that plaintiffs permitted rooming houses to exist for such length of time (since 1925) as to make them guilty of laches.

In deciding cases involving restrictive covenants, we have announced and observed various rules. One is that the cases present such wide difference in facts that, in equity, but few rules can be universally or even generally applied. In the main, each case must be determined on its own facts. *Putnam* v. *Ernst*, 232 Mich. 682. Also, restrictions are not favored in law; they will be construed as found. *Putnam* v. *Ernst, supra.* But the primary rule is this, as cited by Justice Butzel in *Taylor Avenue Improvement Ass'n* v. *Detroit Trust Co.*, 283 Mich. 304, 311: "As a rule, we will uphold a restriction whenever it remains of any substantial benefit to the parties objecting to its violation, provided they are not estopped by their conduct from making such objection." See *Swan* v. *Mitshkun*, 207 Mich. 70, 76:

"It is the policy of the courts of this State to protect property owners who have not themselves violated restrictions in the enjoyment of their homes and holdings, free from inroads by those who attempt to invade restricted residential districts and exploit them under some specious claim that others have violated the restrictions, or business necessities nullified them."

Defendant's first and second grounds of defense are not tenable. The rule in this State is that restrictions need not be uniform nor follow a general plan to the extreme; the common grantor can release certain lots and vary the restrictions. See *Farley* v. *Finn,* 226 Mich. 205, 209; *Harvey* v. *Rubin,* 219 Mich. 307; *Frink* v. *Hughes,* 133 Mich. 63.

We may consider the remaining defenses collectively, *i. e.,* that commercial establishments have been permitted in the area and that rooming houses have been established for a long time so as to show a change in the neighborhood and waiver or laches by plaintiffs.

Defendant charges that there are or have been 23 rooming houses on Seyburn avenue and that there had been repeated violations and waivers of the restrictive covenants by permitting the erection of a hospital, double houses, flats, terraces, apartments, a church, and maintenance of doctors' and dentists' offices. Also, in June, 1934, defendant had rented the premises in question, at '1458 Seyburn avenue, and maintained a rooming and boarding house there until October 15, 1937, when she purchased premises located at 1085 Seyburn avenue where she then ran and now runs a rooming and boarding house.

The court below found, however, that there was no outward appearance showing or tending to show that Seyburn avenue has changed in character from a strictly high-class residential street to a business or rooming-house section. An examination of the testimony sustains this finding, though there is some testimony to the contrary of not too convincing nature. The fact is that the neighborhood still remains substantially residential. This justifies plaintiffs' contention that though some businesses admittedly have been established, these do

not operate to preclude plaintiffs from seeking to enjoin the defendant from establishing a rooming and boarding house at 1458 Seyburn avenue or preventing plaintiffs from taking steps to check a further or a different violation. There are practically no signs or other evidence visible from the street that the homes are not used as constructed for single family purposes. Also in the past plaintiffs or others have been somewhat active in instituting suits and in giving notices to persons who sought to violate the restrictions.

Nor can we agree that the claimed 23 violations in a subdivision composed of approximately 189 lots necessarily establishes waiver or estoppel. In *Rairigh* v. *Carnell*, 277 Mich. 62, it was held that although there were 21 violations at least in 591 restricted lots, there was no waiver. In *Stewart* v. *Stark*, 181 Mich. 408, there were between 30 and 40 violations in a 600-house area; notwithstanding this, the restriction was enforced. *Misch* v. *Lehman*, 178 Mich. 225, 228, states the applicable rule:

"The true rule seems to be that, even after one or more breaches, equity will grant relief if the restriction can be shown to be of value to complainant, and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not entire, change in the neighborhood."

In the instant case the neighborhood is still a high-class residential area. A substantial portion of the violations asserted by defendant are not of such a character as to be at all conspicuous or readily ascertainable, as for example, the housing of a single roomer. The character, as well as the number, of claimed violations must be considered in determining whether the complaining property owners have waived or forfeited the benefit of a restriction. In

the instant case because the testimony is conflicting and more or less of a hearsay character, it is hardly possible to determine definitely whether there are any other violations at all in the block in which 1458 Seyburn avenue is located. It does not appear that there are any violations of the scope and character of that with which defendant is charged. No one is operating a general boarding house, with numerous roomers, although in some two or three instances the occupant of a residence may be from time to time renting one or two rooms. Surely the condition in this particular block is not such as to constitute a waiver of or an estoppel against enforcement of the restriction by other property owners.

Under the record before us the defendant cannot successfully assert the defense of laches. She contracted to buy the property at 1458 Seyburn on March 7, 1940, with full knowledge of the restriction. She had previously received a letter warning her of possible litigation to prevent a violation of such restriction. On March 12, 1940, she received another like notice, and this suit was started April 22, 1940. The fact that she had violated the restriction while she was a tenant of this same property from 1934 through 1937 or that there had been some other violations in the subdivision did not justify her in purchasing these premises in 1940 with the avowed purpose of breaching the very restriction contained in her contract of purchase. See *McNair* v. *Raymond,* 215 Mich. 632, 636.

In *Sanders* v. *Campbell,* 231 Mich. 592, it was held that even where there was delay in asserting the right, that in itself did not constitute laches; instead the delay must have resulted in some prejudice to the party asserting laches which would make it inequitable to disregard the lapse of time and incidental consequences. From the record now before us it does not appear there were any exterior

changes in the property in question, or that there were any extensive interior changes. While defendant paid $500 as a down payment for the property, there is no testimony that it could not now be advantageously used as a residence. Defendant will not suffer a loss due to plaintiffs' delay that is not more than outweighed by the opposing rights and interests of plaintiffs.

The remaining asserted error has to do with letters and replies sent to and received by parties other than defendant. These were admitted in evidence by the trial judge to show diligence on the part of plaintiffs in protesting and seeking to prevent breaches of the restrictions. Appellant contends that the admission of such evidence was in violation of the hearsay rule. The obvious purpose of introducing these letters was not to prove the truth of the contents, but rather to show diligence on the part of plaintiffs. See *Perkett* v. *Railroad Co.,* 175 Mich. 253, where letters were admitted not to prove what they contained but rather that the plaintiff had actively objected, thereby rebutting defendants' claim that he had acquiesced. The court's ruling in the particular noted was not prejudicially erroneous.

The decree of the trial court is affirmed, with costs to appellees.

CHANDLER, C. J., and BOYLES, STARR, BUTZEL, BUSHNELL and SHARPE, JJ., concurred. WIEST, J., did not sit.