DᴇMARCO ᴠ PALAZZOLO

1. Aᴘᴘᴇᴀʟ ᴀɴᴅ Eʀʀᴏʀ—Eǫᴜɪᴛʏ—Rᴇᴀʟ Pʀᴏᴘᴇʀᴛʏ—Rᴇsᴛʀɪᴄᴛɪᴠᴇ Cᴏᴠᴇ-
NANTS.

Appellate review of a case seeking to have certain restrictive
covenants limiting land use declared void, traditionally sound-
ing in equity, is *de novo;* however, a lower court's decision will
not be reversed unless the evidence is found to preponderate
contrary to the holding of the trial court.

2. Eǫᴜɪᴛʏ—Rᴇᴀʟ Pʀᴏᴘᴇʀᴛʏ—Rᴇsᴛʀɪᴄᴛɪᴠᴇ Cᴏᴠᴇɴᴀɴᴛs.

Historically, a court of equity seeks to protect to the greatest
extent possible the conflicting interests of both parties, and
therefore, in a case seeking to void restrictive covenants limit-
ing the use of real property to residential purposes, the court
balances the competing and valid interests of the parties, who
on the one side seem to assert their right to maximize the use
of their land, and on the other, assert their right to quiet
enjoyment of their land; the principles of equity establish that
restrictive covenants are not merely intended to apply and be
enforced only so long as it is convenient to do so, but it is just
as certain that restrictive covenants ought not to be enforced
when enforcement protects no one.

3. Cᴏᴠᴇɴᴀɴᴛs—Rᴇsᴛʀɪᴄᴛɪᴠᴇ Cᴏᴠᴇɴᴀɴᴛs—Eᴠɪᴅᴇɴᴄᴇ—Lᴀɴᴅ Usᴇ—Ex-
ᴛᴇʀɴᴀʟ Cʜᴀɴɢᴇs.

A trial court in a case seeking to void restrictive covenants
limiting the use of real property to residential purposes did not
err in considering changes in land use outside the area covered
by the restrictive covenants as they have affected the condi-
tions inside the covenanted area where such factors as traffic,
dirt, noise, and inconvenience of nearby commercialization
were already an established detriment impairing the benefit of
the restrictive covenant, and in holding, therefore, that it
would be inequitable to enforce the restrictive covenants as to
plaintiff's land; a modification of restriction coupled with the

Rᴇꜰᴇʀᴇɴᴄᴇs ꜰᴏʀ Pᴏɪɴᴛs ɪɴ Hᴇᴀᴅɴᴏᴛᴇs
[1] 4 Am Jur 2d, Appeal and Error § 358.
[2, 3] 20 Am Jur 2d, Covenants § 182.

imposition of a "green belt" protecting lot owners on the adjoining residential street was proper.

Appeal from Macomb, Hunter D. Stair, J. Submitted Division 2 May 9, 1973, at Detroit. (Docket No. 14321.) Decided May 24, 1973.

Complaint by Tony DeMarco and others against Vencenzo Palazzolo and others for declaratory relief from certain restrictive covenants limiting the use of their land to residential purposes. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Coticchio, Zotter & Sullivan, P. C.,* for the plaintiffs.

*Robert J. Henze,* for the defendants.

Before: J. H. GILLIS, P. J., and HOLBROOK and BASHARA, JJ.

J. H. GILLIS, P. J. Plaintiffs, individual owners of lots fronting on Ten Mile Road near Mackinac Street in the City of Roseville, Michigan, brought this action seeking to have certain restrictive covenants limiting land use to residential purposes declared void. Defendants are adjacent property owners whose lots front on Mackinac Street. Plaintiffs prevailed below; defendants appeal as of right.

At the outset, we note that appellate review of this matter, traditionally sounding in equity, is *de novo;* however, a lower court's decision will not be reversed unless the evidence is found to preponderate contrary to the holding of the trial court. *Osius v Dingell,* 375 Mich 605 (1965); see also *Altese v Neill,* 1 Mich App 437 (1965).

The evidence at trial showed that 15 or 20 years ago, when plaintiffs purchased their property in the subdivision involved, the neighborhood was

pastoral, countrified and generally without commercial use of property. Ten Mile Road was a two-lane street.

Since then, the Edsel Ford Freeway was constructed, substantially eradicating the subdivision of which plaintiff Pantelis' property was a part. Ten Mile Road has become a four-lane thoroughfare, funneling traffic across the freeway at the rate of 24,000 vehicles per day. All other properties in the immediate vicinity that front on Ten Mile Road are now used commercially. Two expert witnesses testified plaintiffs' properties, the only lots in the subdivisions that face Ten Mile Road, were not suitable for residential purposes, as compared to their commercial value.

The trial judge, after viewing the area, held the residential use restrictions void as applied to plaintiffs but required them to create a "green belt" to protect defendants' residential property from any detrimental effects of subsequent commercialization.

In spite of the clear evidence adduced by plaintiffs, this is not an easy case. At issue is whether changes *outside* a covenanted subdivision may be considered in determining whether enforcement of reciprocal negative easements such as those here involved would still benefit a dominant estate. There is an apparent split of authority in Michigan jurisprudence on this recurring problem.

A line of cases,[1] apparently headed by *Swan v*

---

[1] *See, e.g. Rosenzweig v Rose,* 201 Mich 681 (1918); *McQuade v Wilcox,* 215 Mich 302 (1921); *Bohm v Silberstein,* 220 Mich 278 (1922); *Benzing v Harmon,* 219 Mich 532 (1922); *French v White Star Refining Co,* 229 Mich 474 (1924); *Putman v Ernst,* 232 Mich 682 (1925); *Boston-Edison Protective Ass'n v Goodlove,* 248 Mich 625 (1929); *see also Wineman Realty Co v Pelavin,* 267 Mich 594 (1934); *Bigham v Locklin,* 275 Mich 545 (1936); *Redfern Lawns Civic Ass'n v Currie Pontiac Co,* 328 Mich 463 (1950), and cases cited therein; and *Cooper v Kovan,* 349 Mich 520 (1957).

*Mitshkun,* 207 Mich 70, 74 (1919), hold changes in land use outside covenanted property are *not* relevant, and explain the policy as follows:

"[T]hose owning property in a restricted residential district or neighborhood, and especially those who have their homes there, and been led to buy or build in such locality by reason of restrictive covenants running with the land imposed upon the street, block or subdivision in which they have purchased, are entitled to protection against prohibited invasion regardless of how close business may crowd around them on unrestricted property, provided the original plan for a residential district has not been departed from in the restricted district, street or block, and the restrictive requirements have been generally enforced, or accepted and complied with by purchasers."

An equally compelling, longstanding and current line of authority[2] holds considerations of land use patterns of surrounding property *are* relevant to the determination of the enforcement of a restrictive covenant. In *Windemere-Grand Improvement and Protective Ass'n v American State Bank,* 205 Mich 539, 548 (1919), a case factually similar to the one at bar, the Supreme Court stated:

"Certainly no decree of this court can retain or restore the quiet suburban conditions existing and contemplated when those residential restrictions were imposed. It cannot eliminate the 'vast growth of manufacturing and business institutions out there,' and invasion of traffic which has made 'all Woodward avenue in that vicinity' an exceptionally noisy and busy street. This unforeseen and radical change in condition and character of the street has defeated the object and purpose of the restrictive covenants upon this lot, which had rela-

---

[2] *See, e.g. Frink v Hughes,* 133 Mich 63 (1903); *Moore v Curry,* 176 Mich 456 (1913); *Taylor Avenue Improvement Ass'n v Detroit Trust Co,* 283 Mich 304, 311 (1938); *Harrigan v Mulcare,* 313 Mich 594 (1946); *Dipboye v Acchione,* 351 Mich 550 (1958); *Altese v Neill,* 1 Mich App 437 (1965); *Feldman v Court,* 5 Mich App 160 (1966).

tions to protecting the home, or dwelling house, and equity does not now, under the concessions and facts shown, demand that defendant be enjoined from improving and using as proposed this lot thus made worthless for residential purposes."

We reiterate, as we attempt to reconcile the divergent authority as applied to the facts of this case, that this lawsuit is, in nature, grounded in principles of equity. Historically, a court of equity seeks to protect to the greatest extent possible the conflicting interests of *both* parties. McClintock, Equity, § 30, p 78. We, therefore, balance the competing and valid interests of the parties, who, on one side seek to assert their right to maximize the use of their land, and on the other, assert their right to quiet enjoyment of their land intended, as it was, for residential purposes.

The principles of equity announced in the cases on both sides of this issue establish that restrictive covenants are not merely intended to apply and be enforced only so long as it is convenient to do so. However, it is just as certain that restrictive covenants ought not to be enforced when enforcement protects no one. We note this concept is expressed to some degree in cases on either theory of the relevance of marked changes in surrounding areas.

The trial court's opinion clearly makes reference to changes in land use outside the subdivisions *as they have affected the conditions inside the covenanted area.* That is, the traffic, dirt, noise, and inconvenience of the nearby commercialization on Ten Mile Road and along the Edsel Ford Freeway is already an established detriment, for which defendants have no remedy. Thus, the benefit of the restrictive covenant to the remaining residential owners has been substantially impaired. The trial judge, recognizing that, held it would be

inequitable to apply the restrictive covenant to plaintiffs' land, the only property in question facing Ten Mile Road. We affirm that decision.

However, that decision only affects plaintiffs' property. For the protection of the remaining residential owners, especially those immediately adjacent to plaintiffs' land, the trial court ordered a "green belt or fence area as provided by the local ordinances" to be established to separate plaintiffs' property from the lots fronting on Mackinac Street. There is authority for such a compromise modification. In *Putnam v Ernst,* 232 Mich 682 (1925), a 15-foot building line was continued in force even though other restrictions were held inapplicable. A similar balance of the equities was accomplished in *Taylor Avenue Improvement Ass'n v Detroit Trust Co,* 283 Mich 304 (1938). We are satisfied the modification of restrictions decreed by the trial judge, coupled with the imposition of a "green belt" adequately protects the lot owners whose land faces Mackinac Street.

Affirmed. Costs to plaintiffs.

All concurred.