OLIVER *v.* WILLIAMS.

1. COVENANTS — DEEDS — BUILDING RESTRICTIONS — INJUNCTION— ESTOPPEL.

Where property owners in a restricted residence street construed a restriction in their deeds that no building should be built nearer to the street line than 30 feet as having reference to the main bearing walls of the building, and having no application to porches, which

were built within the restricted area, with the result that the line is uniform and secures to them the beneficial effects of the restriction, they are not thereby estopped from enjoining defendants from erecting a store building on the street line in violation of the restriction in their deed.

2. SAME—ABANDONMENT OF RESTRICTION.

Nor is there any abandonment of the restriction under the evidence; the presumption against abandonment being supported by the practical construction given thereto by the general scheme followed.

3. SAME—VIOLATION OF RESTRICTION BY ONE OF THE PLAINTIFFS No BAR TO INJUNCTIVE RELIEF.

That one of the plaintiffs had violated restrictions in his deed, would not prevent the granting of injunctive relief.

Appeal from Kent; Perkins (Willis B.), J. Submitted October 11, 1922. (Docket No. 81.) Decided December 29, 1922.

Bill by Fred L. Oliver and others against Charles F. Williams and another to enjoin the violation of certain building restrictions. From a decree for plaintiffs, defendants appeal. Affirmed.

*Emil B. Gansser,* for plaintiffs.

*Carroll, Kirwin & Hollway,* for defendants.

WIEST, J.   Bill to enjoin violation of a building line restriction on Hampton avenue in the city of Grand Rapids, and answered by claim of violations by plaintiffs and others to the extent of releasing defendants from observing the restriction in their deed.   The lots in question were platted in 1908, and front on the east side of Hampton avenue.   The restriction plan adopted in 1909 contemplated high grade residences built on a line 30 feet from the street.   The Jones residence is on lot 13 and next to lot 14, and the Oliver residence on lot 12.   The defendants own lot 14, except the east 26 feet thereof, and lot 17.

Restriction in defendants' deed:

"No building shall be built on said lots 14 and 17 that shall be nearer Giles avenue (now Hampton avenue) than 20 feet."

Restrictions in plaintiffs' deeds:

"Nothing but a dwelling house shall be built on said lot and that said dwelling shall not cost less than $2,500 and not be nearer the street line than 30 feet."

The Jones house was built with the main bearing wall at the 30-foot line, with a substantial porch built as a part of the house within the restricted area, and with an extension of the second story a short distance over the porch. This porch at first was open and later screened in the summer and windows put in for the winter. The Oliver house is of like construction, except there is no extension of the second story over the porch. Other houses on Hampton avenue have their porches within the restricted area.

Defendant purchased his lots in 1920, and proposes to erect a one-story store building to the street line covering the west 20 feet of lot 17 and the west 20 feet of the south 7 feet of lot 14. All the residences in the block have been erected since 1908, with their main house bearing walls 30 feet from the street line, and some of them have inclosed porches of such substantial character as to constitute them rooms of the houses and extending 8 or 9 feet into the restricted area.

Defendants insist that this releases their lots from the restriction, or, at least, prevents plaintiffs from invoking the restriction in this suit. Plaintiffs claim that, by practical construction, the 30-foot restriction relates only to the front bearing walls of the residences, and not to the porches, and the general plan so followed has resulted in a fine residential street with the houses in line, and such restriction is of great benefit.

When defendants purchased lots 14 and 17 they bound themselves to observe the restriction in their deed, although they claim they were advised that the restriction had been nullified by the erection of the inclosed porches. If defendants are restrained to the terms of their deed they have all their deed gave them.

Have plaintiffs barred themselves from equitable relief in constructing inclosed porches within the restricted area? It is evident that the plan was to have all the houses, fronting on Hampton avenue, built on a uniform line and this, from the very start, was construed to mean the distance from the street to the main front bearing walls of the houses.

Thomas Benjamin, who owned the property in 1909, and opened Hampton avenue and through whom all parties derive title, built some houses on the avenue, and testified at the trial:

"*Q.* Now, these houses that you built there, where did you place them on the lots?

"*A.* Why, 30 feet back from the front of the street.

"*Q.* What part of the house did you include as the line, your 30-foot line?

"*A.* The front of the house, the main bearing wall.

"*The Court:* Not the front porch?

"*A.* No, sir.

"*Q.* That did not include the steps?

"*A.* No, sir. You see, in order to make the houses line up, to make the street look right, some put on wide porches and some narrow, and some don't have any at all, so have the main part of the house line up."

William Benjamin, son of Thomas, and a real estate dealer, testified:

"In all cases the restrictions in the deed covering the lots facing Hampton avenue were complied with; we staked out over half the houses on that street according to the building restrictions and set them back 30 feet to the main bearing wall of the house, that is, to the front four walls of the house, 30 feet back, in front of the street line; that was done on all

the houses we staked out; there were less than half the houses on that plat that we did not stake out or have anything to do with staking out; I was present and have knowledge of their being staked out."

The lot owners have not departed from the plan, as construed at its inception by its creator, and the result is that the dwellings are in line and a desirable residence street exists.

Shall this be destroyed because the plan was not construed to place the porches back of the 30 foot line? Surely, the defendants ought not to be permitted to come at this late day and, on the claim that every one has labored under a mistake, take away the very residence value of all the property on the street. Defendants knew, when they purchased their lots, of the building restriction thereon and, while they accepted the same, they evidently did so with the mental reservation that they would not abide thereby if they could avoid the obligation. It constitutes no hardship to defendants to hold them to the restriction, as construed by practical endeavor, but it would be an inequitable hardship to the owners of residences to permit defendants to wipe out all their efforts to make a fine street by permitting them to erect a store building to the street line at the corner. No one, apparently, before defendants appeared upon the scene, questioned the practical construction given the restriction, and it is too late now for defendants to successfully contend that such efforts to comply with the plan of restriction shall be swept aside because of a wrong idea of the strict letter thereof. If it be held that the inclosed porches, within the restricted area, constitute violations of the letter of the line restriction it constitutes no abandonment of the restriction so far as it remains beneficial.

Berry on Restrictions on Use of Real Property, § 375, states:

"The fact that a number of buildings had been erected with the main body of each building located with reference to the building line, and with porches and bay windows extending over the line, indicates a popular interpretation of the restriction to that effect. If they had been erected under erroneous construction of the covenant, that fact is no evidence of an abandonment of the general scheme."

Defendants have shown, at the most, no more than an erroneous construction of the restriction as to building line, accepted by all builders as the true interpretation and followed as the plan for making the street desirable for expensive residences. The presumption against abandonment of the restriction as to line is supported by the practical construction under which the scheme of a building line has been preserved. There was no abandonment under the evidence. See *Morrow* v. *Hasselman*, 69 N. J. Eq. 612 (61 Atl. 369) ; *Brigham* v. *H. G. Mulock Co.*, 74 N. J. Eq. 287 (70 Atl. 185) ; *Rogers* v. *Zwolak* (Del. Ch.), 110 Atl. 674. The principle of practical construction was recognized in *James* v. *Irvine*, 141 Mich. 376.

The restriction was not abandoned altogether, but only *pro tanto*, and that in an effort to comply therewith, and a material and beneficial part remains and has been uniformly observed and will be protected.

In *Howland* v. *Andrus*, 80 N. J. Eq. 276 (83 Atl. 982), a second-story projection above an open porch extended 4 feet beyond the restriction line, and was held a violation and it was insisted that plaintiff there could have no relief. Upon this question it was said:

"In determining whether the complainant is chargeable with such inequitable conduct as to disentitle him to enforce any rights whatever under a restrictive contract, the whole situation and circumstances as to the nature, burden and object of the restrictive contract, and the extent to which the violation by the complainant affects the contract, must be considered as well as the circumstances of its violation. The

denial of the remedy or relief upon the covenant is not a conclusion which follows necessarily upon the fact of complainant's violation, but the denial of complainant's right to equitable relief for protection of his equitable right depends on the whole circumstances of the case, as affecting his own equitable status.

"The violation to have this effect must, I think, be such as to affect in a substantial manner the benefit to the adjoining lots of the covenant imposed on the complainant as part of the consideration of the grantor's deed to complainant. Considering the manifest general object of the covenant and the effect of this structure, this projection of the second-story a few feet beyond the sixty-foot line does not, in my judgment, so substantially affect the beneficial effect and operation of complainant's own covenant as to disentitle complainant to its enforcement against purchasers of the adjoining lots with notice of the location before their purchase.

"There is a further reason why the complainant's construction of his dwelling on these lines cannot be considered as an inequity which deprives him of any relief on his grantor's covenants.

"It is proved that before locating and building his dwelling, he submitted the plans to his grantor, Mr. Bardsley, then still the owner of the adjoining lots on both sides, and that Mr. Bardsley approved and consented to them as complying with the restrictions, and the dwelling was erected after such approval. This approval was proved, it is true, by parol evidence *dehors* the deed, and no evidence of defendant's knowledge of it has been shown. But while this fact would be important as a defense if the application now were made to enforce against defendant a parol variation of the covenant in the deed of which defendant has constructive notice, it is not entitled to any decisive consideration upon the precise question now to be solved, viz., whether the complainant's location of the upper story of his dwelling a few feet within the restricted line is, on the whole circumstances of the case, such an inequity that he should be deprived of any equitable relief upon the covenants as to the adjoining lots. And in solving that question of complainant's status, the conduct of the grantor, who

then owned these adjoining lots, in approving the construction as a proper location of the line under the covenant, is vital and decisive.

"Defendant's contention is that this location, even if consented to by the grantor, had the effect *ipso facto* of relieving the adjoining lots from any burden of the covenants as to the restricted line, so far as they were imposed by the deed itself, and that any subsequent grantee without notice of the location by consent and with notice only of the restriction in the deed, holds the adjoining lots free from any restriction as to the distance of the dwelling from Wildwood avenue merely because a portion of the dwelling is within the line.

"In my judgment, the matter of the location of the dwelling on the line in this case was somewhat analogous to the location of a boundary, and locations of dwellings not being such as apparently and substantially affect the beneficial operation of the covenants should not, as between subsequent purchasers claiming under the parties agreeing on the location, be treated as if made without agreement and under the assertion of independent adverse rights under the covenant, or in violation of it."

This case also answers the contention made here that the projection above the porch of the Jones house prevents equitable relief. There has been no waiver by plaintiffs of their right to insist upon an observance of the restriction. An honest interpretation, though a mistaken one, accepted and acted upon, constitutes no waiver.

Defendants insist that the suit cannot be maintained because the Oliver house is used as a two-family apartment in violation of the restriction that "nothing but a dwelling house shall be built," etc. There might be force in this if the Olivers were sole plaintiffs.

The same question was presented in *Compton Hill Improvement Co.* v. *Strauch,* 162 Mo. App. 76 (141 S. W. 1159), and it was held, that the fact that one of the plaintiffs had violated restrictions would not prevent the granting of injunctive relief. We so rule.

The circuit judge entered a decree restraining defendants from violating the restriction in their deed.

The decree is affirmed, with costs to plaintiffs.

FELLOWS, C. J., and MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.