## PUTNAM *v.* ERNST.

1. COVENANTS—BUILDING RESTRICTIONS — GENERAL PLAN TO RESTRICT NOT DESTROYED BY FEW EXCEPTIONS.

That seven lots out of 120 in a restricted subdivision were not restricted, would not destroy the general plan of restrictions in the subdivision.[1]

---

[1] Deeds, 18 C. J. § 459.

On right to enforcement of restrictive covenant as affected by change in neighborhood, see note in 28 L. R. A. (N. S.) 706.

2. SAME—CHARACTER OF SUBDIVISION NOT CHANGED—INJUNCTION.
   The character and environment of a restricted sub-division, *held*, not changed so materially as to make it inequitable to enjoin a breach of the restrictions.[2]

3. SAME—CONSTRUCTION OF RESTRICTION—WAIVER—ESTOPPEL.
   Although there are cases holding that double houses, four-family flats, and apartments may not be erected on lots restricted to "dwelling house," lot owners are not estopped from enforcing restrictions against business buildings on lots so restricted by reason of the fact that they failed to appeal from a decree against them in a suit by them to enjoin the erection of a double house and thereafter construed said restriction to permit the erection of such structures, where it is apparent that there was no intention to waive or abandon any restriction.[3]

4. SAME—CASES DETERMINED ON OWN PARTICULAR FACTS.
   Building restriction cases present such wide difference in facts, that, in equity, but few rules can be applied generally, and in the main each case must be determined on its own facts.[4]

5. SAME—RESTRICTIONS NOT FAVORED IN LAW—NOT ENLARGED BY CONSTRUCTION.
   Restrictions are not favored in law, and they will not be enlarged or extended by construction, but will be construed as found.[5]

6. APPEAL AND ERROR—PARTY MAY NOT COMPLAIN OF ADVERSE PORTION OF DECREE NOT APPEALED FROM.
   Parties may not complain of that portion of a decree adverse to them from which they have not appealed.[6]

7. COVENANTS — RESTRICTIONS ARE NEGATIVE EASEMENTS WHICH WILL BE ENFORCED SO FAR AS BENEFICIAL.
   Restrictions are, in nature, reciprocal negative easements, and while they remain beneficial to the dominant estate, material violations of them will be enjoined to the extent that they remain beneficial.[7]

8. SAME—CORNER LOTS—RESTRICTIONS RETAINED ON STREET WHERE BENEFICIAL ALTHOUGH NOT ENFORCED ON OTHER.
   Where it appears that it would still be beneficial to lot owners on a certain street, which has retained its resi-

---

[2]Deeds, 18 C. J. §§ 400, 465; [3]Id., 18 C. J. § 468; [4]Id., 18 C. J. § 465; [5]Id., 18 C. J., §§ 449, 450; [6]Appeal and Error, 4 C. J. §§ 2598, 2599; [7]Deeds, 18 C. J. §§ 465, 448 (Anno).

dential character, to have the building line as provided in the restrictions and also the restriction against business purposes preserved, violation of the restrictions on such street will be enjoined on corner lots fronting thereon, although they have been freed therefrom on the other street on which they front.[3]

Appeal from Wayne; Mandell (Henry A.), J.   Submitted October 20, 1925.   (Docket No. 116.)   Decided December 22, 1925.

Bill by Herbert J. Putnam and others against Robert Ernst and others to restrain the violation of building restrictions.   From a decree for plaintiffs, defendants appeal.   Modified and affirmed.

*Corliss, Leete & Moody* and *Yerkes, Simons & Goddard* (*Paul B. Moody,* of counsel), for plaintiffs.

*John J. Sloan* and *Julius J. Lechner* (*Frank W. Allen,* of counsel), for defendants.

CLARK, J.   The bill was filed by resident lot owners of the subdivision to enjoin violation of building restrictions.   The subdivision involved is "Warner's subdivision of lot 6 of quarter section 45 of the ten thousand acre tract, Detroit."   The lots lie on both sides of Hazelwood avenue from Woodward avenue on the east to Hamilton avenue on the west and are numbered from 1 to 120.   Lot 60 is on the northwest corner of Woodward and Hazelwood, 135 feet on Woodward, 200 feet on Hazelwood.   Defendants own the east 140 feet of the lot and propose building a nest of small stores thereon, some facing and adjoining Woodward, others facing and adjoining Hazelwood. Lot 61 is on the southwest corner of Woodward and Hazelwood and is also 135 by 200 feet.

The two lots are restricted of record:

[3]Deeds, 18 C. J. § 468.

"Second party agrees for herself, her heirs and assigns that she will not build or erect a dwelling house upon said premises of a value less than $2,500 nor less than 15 feet from the Hazelwood avenue line and 50 feet from the Woodward avenue line, and to erect no saloon or store thereon or other building except for residence purposes."

The other lots all front on Hazelwood and are, nearly all, 40 feet in width, and it may be said that such lots, except seven of them, are restricted of record to "dwelling," "dwelling house," or "residence purposes," with further restriction that no building shall be nearer than 15 feet to the street line, and that such restrictions have been observed. Some of the residences are larger than single, but the lot owners construed the restrictions to permit apartment buildings, two-family flats, and double houses, and, as so construed, the restrictions have not been violated, except as to lot 61. On the corner of that lot, in 1917, a bank was erected, up to the Woodward lot line, but back 15 feet from the Hazelwood lot line. On the Hazelwood side a walk leads from the sidewalk to a door, with the word "Offices" carved in stone above, leading upstairs to business offices which are rented and occupied. South of the bank and on the same lot is a hotel, built in 1923, out to the Woodward lot line, having four stores used and occupied as such, facing Woodward, on the ground floor. Back of the bank and the hotel is an alley. The record does not show to what extent it is used in connection with the stores but an exhibit indicates that stores and the hotel have access to it. At the inner end of the alley are some concrete ash receptacles. West of the alley is an apartment house, then a driveway, then another apartment house, all on said lot 61. In the subdivision, therefore, there has been no violation of the 15-foot building line on Hazelwood, nor are

there any business places on the avenue, except as above noted.

An excerpt from a finding of the trial court:

"That these restrictions upon lot 60 are still of value to the plaintiffs. * * * That the character of Woodward avenue has so changed that a balancing of the equities requires that defendant Ernst be permitted to use the Woodward avenue frontage of his lot for business purposes under such restrictions and conditions as will preserve the building line and the residential character of Hazelwood avenue and will prevent undue injury to plaintiffs. * * * That the building of stores of the character proposed by defendant Ernst on the Woodward avenue front only, back to a depth of 50 feet, will not greatly injure plaintiff Allen or the other plaintiffs, provided the same are kept 15 feet from Hazelwood avenue line and provided no business is permitted to be done on or through Hazelwood avenue."

Decree was entered accordingly. Defendants have appealed. As plaintiffs have not appealed, it will be taken as settled that the trial court was right in relieving lot 60 of restrictions, in so far as it was relieved. The main question presented by the appeal is, Ought not lot 60 to have been freed wholly of the restrictions? Was the court right in saving to plaintiffs the 15-foot building line on the Hazelwood side of the lot, and in preserving to Hazelwood its character of residence street?

That seven of the 120 lots were not restricted of record does not destroy the general plan of restrictions in the subdivision. *Harvey* v. *Rubin,* 219 Mich. 307.

From what has been said it is apparent that the character and environment of the subdivision have not changed so materially as to make it inequitable to enjoin a breach of the restrictions. *Moore* v. *Curry,* 176 Mich. 456; *Benzing* v. *Harmon,* 219 Mich. 532; 18 C. J. p. 400. Most of the lots are restricted to "dwelling house." Cases, it is pointed out, hold that double

houses, four-family flats and apartment houses may
not be erected on lots restricted to "dwelling house"
and it is argued that, as the erection of several such
structures has been permitted, defendants' property
is now released from all restrictions.

The record shows that there was a contest in the
circuit court, in chancery, in Wayne county, wherein
it was sought to enjoin the erection of a double house
in this subdivision.    The decree was against plaintiffs.
No appeal was taken.     Thereafter the residents, of
the district seem to have construed the restrictions as
permitting buildings for residence purposes including
those of the character above named.     But the sub-
division, except as noted on Woodward, has been
preserved as a strictly residential district.     The re-
strictions were not waived.     There was no intention
to waive.     As construed, in the light of experience
and litigation, they have been preserved and main-
tained.     There was no abandonment, as defendants
may have discovered.     There has been no such de-
parture from the restrictions as to estop plaintiffs
from seeking relief herein prayed.     *Killian* v. *Good-
man*, 229 Mich. 393; *Davison* v. *Taylor*, 196 Mich.
605.     But defendants insist that as it has been de-
termined that their Woodward frontage is business
not residence property and as the restrictions on the
Woodward side have been lifted, it was the duty of
the court also to lift restrictions on their Hazelwood
frontage, and they cite *Windemere-Grand, etc., Ass'n*
v. *American State Bank*, 205 Mich. 539, as decisive.

These building restriction cases present such wide
difference in facts that, in equity, but few rules can
be applied generally.     In the main, each case must be
determined on its own facts.     The *Windemere Case*,
on its facts, was decided correctly.     In that case it
was determined that the 22-foot building line along
Windemere avenue, applicable to the lots of the sub-

division east of lot 4, the lot in question on the northeast corner of Woodward and Windemere avenues, did not apply to lot 4. The restrictions on lot 4 were:

"It being the intention that only one private dwelling house shall be erected on the front of said land, and said house shall be built not less than 35 feet from the front line of said lot, and shall be at least two stories high, and shall be worth at least $3,500; but, the party of the second part may erect a single dwelling on the rear of said lot, the said house to be at least two stories high, to cost not less than $2,500, and to be built not less than 10 feet back from the street line."

Restrictions are not favored in law. They will not be enlarged or extended by construction. They will be construed as found. What building line restriction affected Woodward frontage along the Windemere side of lot 4? Upon comparison of the restrictions on said lot 4, quoted above, with the restrictions on lot 60 in the instant case, also quoted above, a difference will be apparent. In the *Windemere Case*, the plaintiffs, conceding that the restrictions on the Woodward frontage should be lifted, sought to enjoin the building of a bank facing Woodward and up to two feet from the Windemere side of the lot. In the case at bar the plaintiffs concede nothing, of importance here, although they may not complain of that portion of the decree adverse to them, and from which they have not appealed. The case before us must be decided on its own facts as affected by the few rules herein discussed.

These restrictions are, in nature, reciprocal negative easements. As to other lots in the subdivision, defendants' property is here servient, the other lots dominant. While the restrictions remain beneficial to the dominant estate, material violations of them will be enjoined and to the extent that the restrictions

remain beneficial. *Oliver* v. *Williams*, 221 Mich. 471; *Kelman* v. *Singer*, 222 Mich. 454; *Misch* v. *Lehman*, 178 Mich. 225.

"Complainant may acquiesce in the violation of a restriction requiring that no buildings except dwellings shall be erected on certain lots, and retain his right to enforce observance of a restriction requiring the buildings to be of not more than a specified depth." Berry on Restrictions, p. 514.

"If a restriction is still of substantial value to a dominant estate, notwithstanding the changed use of the land and buildings in the vicinity, equity will restrain its violation if relief is promptly sought. *Landell* v. *Hamilton*, 175 Pa. 327 (34 Atl. 663, 34 L. R. A. 227)." Berry on Restrictions, p. 547.

"Where a deed of a city lot, in which the grantor and grantee join, contains a covenant on the part of the latter that neither he nor any person claiming under or through the conveyance shall build upon the lot any building of more than a specified depth, which covenant is declared continuing and for the benefit of owners of other lots than owned by the grantor, so that said lots may have 'freedom of air, light and vision,' one to whom one of the other lots has been conveyed by deed granting the easements, covenants, privileges, etc., belonging thereto, may enforce said covenant so long as it is of any value to his lot.

"The right to enforce such covenant is not affected by acquiescence in the violation of another and distinct covenant, as to the use of the lot, contained in the deed." Syllabus, *Lattimer* v. *Livermore*, 72 N. Y. 174.

See, also, *Zipp* v. *Barker*, 40 N. Y. App. Div. 1 (57 N. Y. Supp. 569); *Codman* v. *Bradley*, 201 Mass. 361 (87 N. E. 591); *McGalliard* v. *Chapman* (N. J. Eq.), 129 Atl. 256; *Loudenslager* v. *Stafford*, 91 N. J. Eq. 1, 150 (116 Atl. 770). 18 C. J. pp. 403, 404; 28 L. R. A. (N. S.) 706, note.

That it is highly beneficial to plaintiffs owning and residing on lots in the subdivision on Hazelwood to

232—Mich.—44.

have the 15-foot building line preserved is undoubted. Woodward avenue is the principal street of Detroit. To build out to the lot line on Hazelwood at its intersection with Woodward will have the effect of "bottling up," as it is said, Hazelwood avenue, and of making the street and corner less desirable and attractive, a consideration which might appeal to defendants themselves. And to permit business places to be opened and conducted in the district on Hazelwood will tend to rob the subdivision of its one distinctive feature, its strictly residential character.

Defendants' property is here freed from restrictions, except that no building may be erected nearer than 15 feet to Hazelwood avenue, and except that the provision of the decree forbidding business on Hazelwood avenue is sustained, but we think defendants should be permitted an alley opening on such street.

So modified, decree is affirmed, with costs to defendants.

McDONALD, C. J., and BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.