NORTHWESTERN HOME OWNERS' ASSN. *v.* SHEEHAN.

1. COVENANTS—VIOLATION OF RESTRICTIONS.
   Each case involving violation of restrictions must stand by itself as the facts so widely differ in each one.

2. JUDGMENT—RES JUDICATA—PARTIES—SUBJECT MATTER.
   Plaintiffs in suit to enjoin violation of use restrictions in a subdivision abutting same widened street as a previous case are

When a change of conditions will justify a denial of injunctive relief against violation of a promise respecting the use of land, see 5 Restatement, Property, § 564; extinguishment of right to such injunctive relief by acquiescence in breaches by another, § 561; by laches, § 562.

not bound by decision therein where they were not parties to other case and an entirely different subdivision was involved; hence the case was not *res judicata* as to them.

3. COVENANTS—RESTRICTIONS—RECIPROCAL NEGATIVE EASEMENTS— ENFORCEMENT.
    Restrictions are, in nature, reciprocal negative easements, and while they remain beneficial to the dominant estate, material violations of them will be enjoined to the extent that they remain beneficial.

4. SAME—CHANGE IN CHARACTER OF DISTRICTS ON SAME STREET.
    A change in character of certain sections of property bordering on a certain street does not warrant removal of restrictions in subdivision bordering on same street where restrictions therein are of value to the lot owners thereof and have been rigidly preserved.

5. SAME—RESIDENCE SUBDIVISION—USED CAR SALES LOT—WAIVER OF RESTRICTIONS.
    Use of lots in a subdivision which had been restricted to single residences costing not less than $5,000 for used-car sales lot was not permissible where the restriction had been rigidly preserved and was not waived by casual use of such vacant lots for short while as parking lot and by farmers for selling produce from their wagons.

Appeal from Wayne; Miller (Guy A.), J. Submitted October 10, 1944. (Docket No. 81, Calendar No. 42,771.) Decided November 30, 1944.

Bill by Northwestern Home Owners' Association, Inc., a Michigan corporation, William C. Sprau and wife and Abraham S. Rogoff and wife against Carl T. Sheehan, Charles M. Bauervic and wife and Hamilton Motor Sales, Inc., a Michigan corporation, for an order requiring defendants to cease violating use restrictions in a subdivision. Decree for plaintiffs. Defendants appeal. Affirmed.

*Robert J. Hanley,* for plaintiffs.

*Kelly, Kelly & Kelly,* for defendants.

BUTZEL, J.  Robert Oakman's Amended Turner and Ford Subdivision consists of 606 lots on the west side of Livernois avenue in the city of Detroit, Michigan.  Oakman boulevard, formerly known as The Ford Highway, is 120 feet wide and runs from near the center of the southerly side of the subdivision in a northerly direction for some distance and then in a northeasterly direction to Livernois avenue. All of the lots on Oakman boulevard including those abutting the west side of Livernois avenue face on Oakman boulevard and were subdivided that way. Lots on Oakman boulevard, including those of defendants, are restricted to single residences, the cost of which shall not be less than $5,000.  The blocks on Oakman boulevard in the vicinity of Livernois avenue are comparatively short, there being five lots, each with a width of not over 52 feet, in each block.  Lot 575 is at the southwest corner of Oakman boulevard and Livernois avenue, and lots 573 and 574 are immediately west of it.  Each of the lots in this block has a width of approximately 50 feet. The city of Detroit in widening Livernois avenue condemned all except 20 and a fraction feet of lot 575.  These 20 and a fraction feet were sold at "scavenger" sale to defendant Sheehan who with defendants Bauervic are the respective owners of lots 573, 574 and 575. Plaintiffs are the owners of lots 510 and 513 in the second block west of Livernois avenue and on the south side of Oakman boulevard. Sprau and wife erected on lot 513 a very substantial home which together with the lot cost $27,000.  There are other very fine homes on Oakman boulevard.  There has not been a single violation of the restrictions.  Defendants, or some of them, have rented lots 573, 574 and 575 to defendant Hamilton Motor Sales, Inc., for a used-car lot. Cinders have been strewn on these lots, a very

small office building erected thereon and a large number of 200-watt lamps have been installed. Plaintiffs and the Northwestern Home Owners' Association, Inc., brought suit to restrain the use of the lots for business purposes and defendants appeal from a decree restraining the violation of the restrictions.

The subdivision was platted years ago when Livernois avenue was a narrow dirt road. It has now become one of the principal thoroughfares in the city of Detroit and through condemnation its width has been extended from 60 to 120 feet. Street car tracks and busses run north and south over Livernois avenue. Defendants claim that the character of the property abutting Livernois avenue and the neighborhood has so changed that the building restrictions are no longer of any force or effect; that it would be inequitable to enforce them, and that defendants' property has become valueless for residence purposes. Defendants mainly rely on the case of *Austin* v. *Van Horn,* 255 Mich. 117, where on the property of a subdivision immediately opposite and on the east side of Livernois avenue and contrary to the restrictions of record, a store building was erected and a mortgage placed, there having been no *lis pendens* filed to notify the holder of the mortgage of the pendency of a restriction suit. We upheld a decree refusing to enforce the restrictions as to the lot in question. The opinion did dwell upon the change in Livernois avenue, that it had become a business street, and also called attention to the destruction of the value of the lot for residence purposes after a large part of it was condemned by the city in the proceedings to widen Livernois avenue. We stated that under the conditions presented in the case, the decree of the trial court not restricting the use of the property solely to residence purposes was

affirmed. We have frequently stated that each case involving restrictions must stand by itself as the facts so widely differ in each one. The plaintiffs were not parties in *Austin* v. *Van Horn, supra,* which related to an entirely different subdivision and are not bound by the findings regarding the law involved in that case. The case is not *res judicata* as to them. In *Putnam* v. *Ernst,* 232 Mich. 682, a case relied upon by defendants, we stated:

"These building restriction cases present such wide difference in facts that, in equity, but few rules can be applied generally. In the main, each case must be determined on its own facts. * * *

"These restrictions are, in nature, reciprocal negative easements. As to other lots in the subdivision, defendants' property is here servient, the other lots dominant. While the restrictions remain beneficial to the dominant estate, material violations of them will be enjoined and to the extent that the restrictions remain beneficial. *Oliver* v. *Williams,* 221 Mich. 471; *Kelman* v. *Singer,* 222 Mich. 454; *Misch* v. *Lehman,* 178 Mich. 225."

In *Putnam* v. *Ernst, supra,* the trial court in a portion of the decree held that there had been such a change in the conditions on Woodward avenue that the property involved could be used for business purposes. Plaintiffs did not appeal from that portion of the decree. They did appeal on the question of the building line and, on appeal, we modified the decree of the trial court so as to enforce the building lot line on the side street on which the lot also abutted and we also forbade any business entrance from such side street.

The real question in the present case is: Are these restrictions still of value to the plaintiffs? There have been very fine homes built in accordance with and in reliance upon the restrictions. The testimony is clear that such restrictions are still of value and,

therefore, they should be preserved and they will be upheld. Our attention is called to the change in the character of other streets in Detroit but whenever it has been shown that the restrictions were still of value, we have held that a change in sections of a street does not affect another part where the restrictions have been rigidly preserved. *Boston-Edison Protective Ass'n* v. *Goodlove,* 248 Mich. 625, 632, wherein we referred to previous cases and also stated:

"Although each case must be considered by itself, there are general rules which must govern. In a long line of decisions we have held that, notwithstanding a street has to a large extent become a business thoroughfare, nevertheless, when certain sections have been restricted in their use to residential purposes on account of restrictive covenants contained in the deeds or the recorded plats of the subdivisions, such restrictive covenants will be upheld."

See, also, *Voorheis* v. *Powell,* 261 Mich. 378 (85 A. L. R. 932); *Wineman Realty Co.* v. *Pelavin,* 267 Mich. 594; *Polk Manor Co.* v. *Manton,* 274 Mich. 539; *Wilber* v. *Wisper & Wetsman Theatres,* 301 Mich. 117.

It is claimed, however, that plaintiffs waived the restrictions by failing to object to the use of certain properties in the same subdivision and located on the west side of Livernois avenue south of the lots owned by defendants. The lots so used front on Livernois avenue and not on Oakman boulevard and it is questionable whether plaintiffs Sprau and Rogoff were damaged by such use. Inasmuch as the alleged violations on Livernois avenue are from 488 to 498 feet away from the plaintiffs' properties, we hold that the failure of the individual plaintiffs to object to the violation of the restrictions even if they

could show any damage therefrom does not preclude them from asserting violations that immediately affect their own properties. *Voorheis* v. *Powell, supra.*

Defendants, however, further claim that the restrictions have been waived by the prior use of their properties for a parking lot. It was shown that such use was only for a short period and that when the proprietor of the parking lot was notified of the violation of the restrictions, he moved his business from the lots. It is further shown that these lots were at times used by farmers' wagons for the purpose of selling produce from the wagons. Such use was casual, was not kept up for any length of time and cannot be considered as an abandonment of the restrictions. The fact that the property may not be as valuable to defendants for residence purposes is no reason why plaintiffs should be deprived of their valuable property rights. The same trial judge who refused to grant the injunction in *Austin* v. *Van Horn, supra,* properly distinguished it from the present case in which he granted an injunction. Other cases cited by defendants are readily distinguishable on their facts from those in the instant case.

The decree is affirmed, with costs to plaintiffs.

North, C. J., and Starr, Wiest, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.