REDFERN LAWNS CIVIC ASSOCIATION *v.* CURRIE
PONTIAC COMPANY.

1. COVENANTS — BUILDING RESTRICTIONS — RECIPROCAL NEGATIVE
   EASEMENTS.

   Restrictions imposed upon use of lots in a subdivision to certain
   types of buildings are, in nature, reciprocal negative ease-
   ments.

2. SAME—BUILDING RESTRICTIONS—RECIPROCAL NEGATIVE EASEMENTS
   —VIOLATIONS—INJUNCTION.

   Material violations of building restrictions will be enjoined
   while, and to the extent, they remain substantially beneficial
   to a dominant estate whose owners are not estopped from
   objecting to the violation.

3. SAME—BUILDING RESTRICTIONS—INJUNCTION.

   The vested right to live in a district uninvaded by stores,
   garages, business and apartment houses is a valuable prop-
   erty right which will be protected by an injunction in a
   proper case.

4. SAME—RESTRICTIONS—RESIDENCE—BUSINESS THOROUGHFARE.

   Covenants restricting use of lots in a subdivision to use for
   residence purposes only will be upheld, notwithstanding a
   street on which some of the lots face has become to a large
   extent a business thoroughfare, provided objectors to violation
   are not estopped.

5. SAME — RESIDENCE RESTRICTIONS — BUSINESS THOROUGHFARE —
   EQUITY.

   Restrictions on lots, facing a business thoroughfare on the
   south, to use for single residence purposes will not be lifted
   so as to permit use for automobile sales and service busi-
   ness, where it appears the subdivision is bounded on the

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur, Covenants, Conditions and Restrictions, § 193.
[2–5] 14 Am Jur, Covenants, Conditions and Restrictions, § 337 *et
seq.*

west and north by a golf course and, with the exception of the one commercial building of defendant on adjoining lot at southeast corner, the east side abuts a subdivision used for residence purposes, subdivision involved herein contains single residences on over half of the lots valued at from $12,000 to $30,000 and no business structures have been erected, the equitable consideration that the lots are undesirable for residence purposes being insufficient to change the buffer area from one place to another and lessen the desirable residential area.

Appeal from Wayne; Toms (Robert M.), J. Submitted June 6, 1950. (Docket No. 13, Calendar No. 44,763.) Decided September 12, 1950.

Bill by Redfern Lawns Civic Association, a Michigan corporation, and others against Currie Pontiac Company, a Michigan corporation, to restrain construction of a building in violation of restrictions. Decree for defendants. Plaintiffs appeal. Reversed and decree for plaintiffs entered.

*George O. Hansen,* for plaintiffs.

*Donald P. Schuur,* for defendant.

SHARPE, J. This is an injunction proceeding brought by plaintiffs to restrain defendant from proceeding to build a commercial building on lots Nos 95, 96 and 97 in Redfern Lawns subdivision in the city of Detroit in violation of a building restriction.

Redfern Lawns subdivision was platted in 1916 and is now located in the city of Detroit. The deeds of two-thirds of the lots in the subdivision executed by the original subdividers contained a restrictive covenant against building other than a single private residence, together with the necessary outbuildings.

The subdivision is bounded on the south by Grand River avenue; on the west by Berg road, west of

which is a public golf course having a frontage on Grand River avenue of about 900 feet; on the north by the golf course; and on the east by the Redford Improvement Company subdivision. The frontage of the Redfern Lawns subdivision on Grand River avenue is 638.2 feet. Most of it is divided into 9 lots facing Grand River avenue, all of which are vacant. Lot No 95 of the Redfern Lawns subdivision fronts on Grand River avenue and is in the extreme southeast corner of the subdivision. Lots Nos 96 and 97 are the next lots to the west of it. Lot No 37 of the Redford Improvement Company subdivision abuts lot No 95 of the Redfern Lawns subdivision on the east and is bounded on the south by Grand River avenue and on the east by McIntyre avenue.

The Redfern Lawns subdivision consists of 98 lots. At the time of hearing in the case at bar substantial homes ranging in value from $12,000 to $30,000 had been built on 55 or 60 of these lots. The remaining lots are vacant. No business structures have been built in this subdivision nor are any of the residence buildings being used for business purposes.

Between November, 1947, and July, 1948, defendant, Currie Pontiac Company, purchased lots Nos 95, 96 and 97 in the Redfern Lawns subdivision. The deeds to these lots contained the building restriction here involved. It also acquired lot No 37 in the Redford Improvement Company subdivision. On May 10, 1949, it secured a building permit to construct a building upon its property to be used to carry on its business of an automobile sales and service company.

On May 12, 1949, plaintiff, Redfern Lawns Civic Association, consisting of about 35 of the 55 residents of the subdivision, and 8 individuals, lot owners, filed a bill of complaint in the circuit court of Wayne county, in chancery, to restrain defendant from constructing the proposed commercial building on lots Nos 95, 96 and 97 of the Redfern Lawns subdivision.

On May 27, 1949, before work was started, the court issued a temporary injunction. After hearing, the trial court entered a decree dismissing plaintiffs' bill of complaint.

The trial court in its opinion stated:

"The controlling question in the case is whether or not the plaintiffs in this subdivision can be required by law to recognize and submit to the irresistible onslaught of business, or whether they can remain an impregnable island in the midst of a commercial sea, with the 9 lots facing on Grand River avenue as a barren breakwater. It is quite obvious that these 9 lots will never be used for the purpose to which they have been restricted. Not a single residence has been built on them in the last 33 years, and it is inconceivable that any person would be eccentric enough to erect a residence on any one of them. * * *

"The zoning authorities of the city of Detroit recognized this fact when it zoned these lots as B-6 for limited commercial use. The court realizes that in so doing the common council could not adjudicate the rights of the plaintiffs in the reciprocal negative covenants with which the lots were burdened, but it is one fact indicated that it is generally recognized that the best business use from the public standpoint is to permit these lots to be put to their best and most advantageous use."

Plaintiffs appeal and urge that the restriction in Redfern Lawns subdivision is valid and should be enforced for the following reasons:

"(1) Single-residence building restrictions were originally imposed upon all lots in Redfern Lawns subdivision and have been complied with and respected by all property owners in the subdivision ever since the property was subdivided over 30 years ago.

"(2) These building restrictions have resulted in the development of a high-grade, strictly residential

subdivision, uninvaded by business of any kind whatsoever.

"(3) The property owners in this subdivision, including plaintiffs, have built and maintained their homes in reliance upon the building restrictions.

"(4) The building restrictions remain of substantial benefit to the property owners in this subdivision, including the plaintiffs.

"(5) The proposed violation of these building restrictions by the defendant will result in substantial damage to plaintiffs and to other property owners in the subdivision."

Defendant contends that the character of the entire area has changed in the 33 years since it was platted and during which the restrictions have been in effect so as to render the restrictions obsolete, oppressive and confiscatory; that the locality in which the property involved is situated has developed into a business or commercial section; that equitable enforcement of residential restrictions would no longer accomplish the purpose thereof or be of any value to anyone; that the only effect of enforcement of the restrictions would be to cause irreparable loss and hardship by depriving owners of such property of its only useful attributes; and that the necessity for commercial buildings and structures to supply the needs of the community and the policy of the law against the perpetual tying up of property in a manner contrary to the public interest should be taken into account.

The general principles concerning the enforcement of building restrictions are stated in *Putnam* v. *Ernst,* 232 Mich 682, where we said:

"These building restriction cases present such wide difference in facts that, in equity, but few rules can be applied generally. In the main, each case must be determined on its own facts. * * *

"These restrictions are, in nature, reciprocal negative easements. As to other lots in the subdivision, defendants' property is here servient, the other lots dominant. While the restrictions remain beneficial to the dominant estate, material violations of them will be enjoined and to the extent that the restrictions remain beneficial. *Oliver* v. *Williams,* 221 Mich 471; *Kelman* v. *Singer,* 222 Mich 454; *Misch* v. *Lehman,* 178 Mich 225."

See, also, *Northwestern Home Owners' Association* v. *Sheehan,* 310 Mich 188; *Boston-Edison Protective Association* v. *Goodlove,* 248 Mich 625; and cases cited therein.

In *Signaigo* v. *Begun,* 234 Mich 246, the home owners were induced to purchase lots and erect homes on the understanding that the street was a residential street of single dwellings. They filed a bill in chancery to restrain defendant from erecting on one of the unoccupied lots an apartment building with stores on the ground floor. We there said:

"The right, if it has been acquired, to live in a district uninvaded by stores, garages, business and apartment houses is a valuable right.   *   *   *

"It is the province of a court of equity to protect the individual in this as in other property rights. *   *   * An examination of these cases will disclose that this Court has not hesitated in proper cases to restrain by injunction the invasion of these valuable property rights. It will not hesitate so to do in the instant case, nor in the future."

In *Taylor Avenue Improvement Association* v. *Detroit Trust Company,* 283 Mich 304, we said:

"As a rule, we will uphold a restriction wherever it remains of any substantial benefit to the parties objecting to its violation, provided they are not estopped by their conduct from making such objection."

We also said:

"We have neither the disposition nor the right to lift or modify restrictions at the expense of or to the damage of any other property holder in the subdivision."

As to the claim that the locality in which the 9 lots are located has developed into a business or commercial section, the principle stated in *Boston-Edison Protective Association* v. *Goodlove,* 248 Mich 625, 632, is controlling. It was there said:

"In a long line of decisions we have held that, notwithstanding a street has to a large extent become a business thoroughfare, nevertheless, when certain sections have been restricted in their use to residential purposes on account of restrictive covenants contained in the deeds or the recorded plats of the subdivisions, such restrictive covenants will be upheld."

See, also, *Northwestern Home Owners' Association* v. *Sheehan, supra; Monroe* v. *Menke,* 314 Mich 268; *Mack Outer Drive Improvement Association* v. *Merrill,* 317 Mich 24; and cases cited therein.

In the case at bar, the subdivision is not "hemmed in" by business developments. To the west and north it adjoins the open area of the golf course. With the exception of defendant's building on lot No 37 of the Redford Improvement Company Subdivision, it appears to be bounded on the east by a residential district.

Defendant argues that there is little unrestricted business property available along Grand River avenue; and that the necessity for commercial buildings and structures to supply the needs of the community is a public interest that should be taken into account. It does not appear that defendant's business is so closely related to the needs of the com-

munity as to require special consideration. Nor can it be said that the scarcity of desirable business sites gives rise to equities which are paramount to the plaintiffs' right acquired by contract to live in a "district uninvaded by stores, garages, business and apartment houses."

The only equitable consideration in the case at bar appears to be the undesirability of using the lots in question for residence purposes. On this point it may be observed that there must of necessity be a dividing line somewhere. The original subdividers made no provision for possible business lots along Grand River avenue. It is inevitable that all lots on the fringe of a residential district may, with the changes of the surrounding neighborhood, become a buffer between the residential area and a business or commercial area. It is one of the factors inherent in considering the nature and value of such property. To lift the restriction under consideration here on the lots in question would only cut down this desirable residential area and create another buffer area. To permit the dividing line to be moved in the case at bar thereby creating another buffer district, now composed of both residences and vacant property, does not present sufficiently strong equitable considerations.

The decree of the trial court is vacated and a decree will be entered herein granting plaintiffs a permanent injunction restraining violation of the building restriction on the lots in question. Plaintiffs may recover costs.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, CARR, and BUSHNELL, JJ., concurred.