ROFE v ROBINSON (ON REMAND)

Docket No. 51131. Submitted June 20, 1979, at Detroit.—Decided
August 12, 1980. Leave to appeal applied for.

Plaintiffs, Edward Rofe, Jim Brooks, Harry A. Law, and Alex
Avram brought suit seeking an injunction to stop defendant,
David Robinson, Marvin L. Robinson, and Robinson Brothers
Realty Company, a partnership, from furthering construction of
an office structure in Hickory Knolls subdivision in Bloomfield
Township. All the lots in the subdivision were subject to deed
restrictions limiting property usage to residential uses. Bloom-
field Township had rezoned 12 lots in the subdivision for
commercial use for office structures only. Defendants had pur-
chased 2 of the 12 lots and had started to construct an office
building thereon. Oakland Circuit Court, Frederick C. Ziem, J.,
granted the injunction. On appeal, the trial court's decision was
reversed and remanded, 93 Mich App 749; 286 NW2d 914
(1979), on the grounds that the surrounding area and circum-
stances had changed such that residential use of the property
in question was no longer desirable, practical or legal and that
the use restriction was no longer valid. Leave to appeal was
granted, and the Supreme Court, 408 Mich 899 (1980), re-
manded to the Court of Appeals for reconsideration in light of
*Redfern Lawns Civic Ass'n v Currie Pontiac Co,* 328 Mich 463;
44 NW2d 8 (1950). *Held:*

1. *Redfern* is to be distinguished and is not controlling, either
upon the facts or upon the law.

2. There are two primary considerations in the establishment
of boundaries between use districts: (1) the relation of each use
district to its neighbor; and (2) the appropriate place for the
boundary line separating one district from the other. These
determinations are better left to city planning boards and
private developers than to courts of equity.

3. The usage permitted by the rezoning in question accom-
plished a use of the property and still protected the dominant

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 26.
[2] 82 Am Jur 2d, Zoning and Planning § 79 *et seq.*

property owners. Such accomplishment is consistent with court-enforced equitable principles.

Remanded.

1. DEEDS — DEED RESTRICTIONS — EQUITY.

As long as a dominant estate benefits from land use restrictions, material violations of the restrictions will be enjoined to the extent necessary to insure that the restrictions remain beneficial; at the same time, however, building restriction cases present such wide differences in facts that few equity rules can be applied generally, therefore, each case must normally be determined on its own facts.

2. ZONING — LAND USE DISTRICTS — BOUNDARIES.

There are two primary considerations in the establishment of boundaries between use districts: (1) the relation of each use district to its neighbor; and (2) the appropriate place for the boundary line separating one district from the other; and the appropriate bodies to make these decisions are city planning boards and private developers, not the judiciary.

*Eggenberger, Eggenberger, McKinney & Weber, P.C.,* for plaintiffs.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *W. A. Steiner, Jr.,* and *Dennis M. Haffey),* for defendants on appeal.

Before: N. J. KAUFMAN, P.J., and D. C. RILEY and J. X. THEILER,* JJ.

(ON REMAND)

J. X. THEILER, J. On remand from the Supreme Court, 408 Mich 899 (1980), we are to reconsider *Rofe v Robinson,* 93 Mich App 749; 286 NW2d 914 (1979), in light of *Redfern Lawns Civic Ass'n v Currie Pontiac Co,* 328 Mich 463; 44 NW2d 8 (1950). *Redfern* was cited and relied upon by the trial judge in his well-developed opinion, and, in passing, he noted, as do we, that the Supreme

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Court in *Redfern* reversed the trial court which had found that a subdivision's restriction as to use was not enforceable.

We determine upon reconsideration, as upon first consideration, that *Redfern* is to be distinguished and it is not controlling, either upon the facts or upon the law. Appellees argued as follows:

"In *Redfern,* the municipality had changed the zoning ordinance from residential to commercial; Grand River Avenue was a major thoroughfare; no commercial buildings had been constructed on any of the lots in question; the lots were vacant; business and commercial buildings were not immediately contiguous to the subdivision; and the desirability of using the vacant lots for residential purposes was small."

Admittedly, there are similarities. Telegraph Rd., like Grand River Ave., is a major thoroughfare and being separated from Telegraph is a continuing benefit to the association, and a residential use is the most desirable "buffer strip".

There are also, however, many dissimilarities. The rezoning at issue in the present case does not authorize commercial uses including, as in *Redfern,* the business of an automobile sales and service company, but rather a commercial use specifically restricted to an office building. The plaintiffs also had permitted, without objection, the alteration of an existing residential structure to an office structure in the disputed area.[1] The

---

[1] It is to be noted in the subject area that an existing residential structure has l en modified to permit an office use. The trial judge, in his opinion, in referring to this existing office stated:

"The use by Bing Construction Company is not so obvious or offensive that it immediately calls for action since it does not violate the structure restrictions and the use violation does not substantially alter the character of the neighborhood."

plaintiffs did not institute suit until the defendants had started construction and expended approximately $30,000. The use of the area in question for residential purposes is not just undesirable but is also impractical and illegal.

The material change of circumstances in the surrounding area is the reason for the rezoning. In *Redfern,* a pyramid use ordinance merely added commercial to residential as a permitted use. Here, the amended zoning ordinance creates an exclusive zone where the property may only be used for offices; it cannot be used for residential purposes.

Justice SHARPE in *Redfern* quoted very broad language from *Putnam v Ernst,* 232 Mich 682; 206 NW 527 (1925), in stating:

"While the restrictions remain beneficial to the dominant estate, material violations of them will be enjoined to the extent that the restrictions remain beneficial." *Redfern, supra,* 468.

On the other hand, he also quoted:

"These building restriction cases present such wide difference[s] in facts that, in equity, but few rules can be applied generally. In the main, each case must be determined on its own facts." *Id.,* 467.

The touchstone of the *Redfern* decision is this statement at 470:

"The only equitable consideration in the case at bar appears to be the undesirability of using the lots in question for residential purposes".

Cases seeking specific enforcement of restrictive covenants are brought in equity, and the chancel-

lor should not be required to abandon his conscience or to wear too small shoes.

In *Cooper v Kovan,* 349 Mich 520; 84 NW2d 859 (1957), Justice EDWARDS cited *Redfern.* The trial judge in *Cooper* had attempted to apply equitable principles in refusing to grant specific enforcement of a reciprocal negative easement and had issued only a limited injunction by requiring the creation of a green belt as a buffer zone. Stated at page 530 of *Cooper* is the following:

"The obvious purpose, of course, was to provide a buffer strip or green belt of residences or lawn between plaintiffs and the proposed shopping center, in accordance with present-day city planning principles. Desirable as such a plan may be in general city planning terms, we must answer the question here as to whether the circuit judge sitting in equity had power to effect such a compromise in the face of and at the expense of existing and valid residential restrictions, or whether such planning must be left to planning boards and private developers.

"We are unable to find that this power lies in judicial hands."

In the present case, equity is not being accomplished in a court of equity but rather by placing the matter in the good hands of planning boards and private developers referred to by Justice ED-WARDS. The planning boards have reestablished the buffer zone in another form.

Good zoning gives recognition to the same principles and concepts that are deemed important to owners of property. The abutting edges of uses are everywhere recognized as difficult areas. As Justice SHARPE recognized in *Redfern,* movement of dividing lines can, in effect, shift the location of a buffer zone.

"There are two primary considerations in the establishment of boundaries between use districts:

"(1) The relation of each use district to its Neighbor.

"(2) The appropriate place for the boundary line separating one district from the other.

"Where each zone is to be in relation to the other zones will depend upon the care with which the legislative body has formulated its zoning plan and the reasonableness with which it has established the various uses and classifications. The most desirable arrangement would be one in which each zone is adjacent on one side to a little less, and on the other to a little more, restricted district. Where this can be done, each zone acts as a 'buffer' between higher and lower uses".[2]

The restrictions imposed on the use of the lots did not contemplate that the lots were to be vacant forever. There was no specific reference to a buffer strip and certainly no wording indicating a weedy green belt.

The municipality has determined that a proper buffer strip can accomplish a use of the property and still protect the dominant property owners. We determine that such planning is consistent with court-enforced equitable principles.

It is our continued opinion that the restriction of use to residential purposes only is inequitable and that the office use is to be permitted. We expressed then and express now no opinion as to how the balance of the restrictions should be enforced or what other equitable remedies might be available to the plaintiff. We would reverse, but remand for further proceedings consistent with this opinion.

[2] Rathkopf, The Law of Zoning and Planning, page 16-6, § 16.02, Buffer Zones and Transitional Zoning.