HARRIGAN *v.* MULCARE.
SAME *v.* FIRST LIQUIDATING CORPORATION.

1. Appeal and Error—Chancery Cases—Building Restrictions.
    Chancery cases involving building restrictions are reviewed *de novo* by the Supreme Court.

2. Covenants—Violations of Restrictions.
    Each case involving violation of building restrictions must be determined on its own facts and each case stand by itself as the facts in each case are different.

3. Same—Injunction—Laches.
    Plaintiffs who filed bill of complaint in suit to enjoin violation of residential building restrictions a few days after appearance of sign in front of premises that they would be used for a wholesale display room were not guilty of laches as against such defendants except as they may have acquiesced in other violations in the subdivision on property facing the same street for such length of time and to such an extent that the character of the use of the property had changed from residential to commercial use.

4. Same—Injunction—Estoppel—Acquiescence.
    Where it appears that subdivision contained 405 lots and that of the 37 lots, including defendants', facing on one street, 15 have been used in whole or in part for commercial purposes over varying periods of time for 20 years, plaintiff owners of lots on other streets in same subdivision by such acquiescence are estopped from obtaining injunctive relief to enforce restrictions solely for residential use.

5. Injunction—Violation of Building Restrictions—Residences—Commercial Use—Display of Caskets—Convalescent Home.
    Injunction against use of premises, restricted to use for residential purposes, for display of caskets and for a convalescent home would not be granted where other nearby lots in same subdivision likewise restricted have been used for undertaking establishments and other commercial purposes for many years.

---

Equitable defenses to enforcement by injunction of a promise respecting use of land, see 5 Restatement, Property, § 561 as to acquiescence in breaches by another; § 562 as to laches; § 564 as to change of conditions.

6. SAME—COVENANTS—BUILDING RESTRICTIONS—EQUITY.

Whether court of equity will grant or withhold injunctive relief respecting observance of building restrictions depends on the accomplishment of equitable result in light of all circumstances surrounding particular case.

7. EQUITY—BUILDING RESTRICTIONS—RESIDENCES—CHANGED CONDITIONS—BUSINESS.

The equity court will not enforce the provisions in a deed restricting the use of the premises to residential purposes, where, since the dedication of the plat, the character of the locality has changed from a residential to a business section, and adjoining lots, originally containing the same restrictions, have been freed therefrom, and are now used for business purposes.

Appeal from Wayne; Moll (Lester S.), J. Submitted January 15, 1946. (Docket Nos. 81, 82, Calendar Nos. 43,288, 43,289.) Decided March 4, 1946.

Separate bills by Edward M. Harrigan and others against Ellen Mulcare and others and First Liquidating Corporation and Gladys Edwards to restrain violation of use restrictions. Cases consolidated for trial and appeal. Decrees for plaintiffs. All defendants appeal in first case and defendant Edwards in second. Reversed and bills dismissed.

*Clyde C. Sanders* and *David B. Lichtig,* for plaintiffs.

*Axford, Cashen, Nolan & Watson,* for defendants and appellants.

BOYLES, J. These two appeals involve two separate bills of complaint filed by the same plaintiffs in the circuit court for the county of Wayne in chancery, to enjoin different defendants from using or permitting the use of certain premises in LaSalle Gardens subdivision in Detroit which front on West

Grand boulevard, except for residence purposes. While the facts differ somewhat as applied to each of the two defendants, the building and use restrictions relied upon by plaintiffs are the same in both cases, and the principles of law involved are the same. The cases were consolidated for trial in the circuit court and are here on one record on appeal. It is conceded that the LaSalle Gardens Improvement Association has been eliminated from the case as a party plaintiff, a motion made by defendants to dismiss the association having been granted by the trial court and no appeal taken from such action. It is also conceded that the other plaintiffs are owners of property in the subdivision and proper parties plaintiff. There is also no question but that the lots in the entire subdivision have been restricted by the plattors to use solely for residential purposes. There are 405 lots in the entire subdivision, in 12 blocks, only 2 of which front on West Grand boulevard, separated by public streets, avenues and a boulevard. The case at bar applies only to the lots fronting on West Grand boulevard, 37 in number. Separate decrees were entered in the circuit court enjoining the defendants from using or permitting the use of the premises here in question for commercial purposes. In the first captioned case all defendants appeal, and in the second case Gladys Edwards appeals.

In chancery cases involving building restrictions, as in other chancery appeals, we review *de novo*. Each case must necessarily be determined on its own facts, and each case must stand by itself as the facts in each case are different. *Carey* v. *Lauhoff*, 301 Mich. 168; *Northwestern Home Owners' Assn.* v. *Sheehan*, 310 Mich. 188. In these two cases the factual situation can be more clearly explained by reference to the plat or diagram which has been in-

cluded in this opinion. It shows that part of the
subdivision material to these two cases.

As appears on that part of the plat of the subdi-
vision shown herein, two of the blocks front on West
Grand boulevard which runs east-west past the
south side (or end) of the subdivision. LaSalle
boulevard extends north from West Grand boule-
vard, bisecting these two blocks as well as the rest
of the subdivision. Plaintiffs Mark E. Smith and
wife live on LaSalle boulevard, at the southeast

corner of the intersection of LaSalle boulevard and Lothrop avenue. They own and occupy a home there fronting on LaSalle boulevard. Plaintiffs Edward M. Harrigan and wife own and reside in a home fronting on LaSalle boulevard in the next block north of the Smith home and north of Lothrop avenue. These plaintiffs have owned and resided in their said homes for approximately 30 years.

The first case (the Eddington case) involves the use of lot 392 fronting on West Grand boulevard, which is the fifth lot east of the intersection of West Grand boulevard and LaSalle boulevard. It is improved by a two-story brick house and a two-car garage in the rear, was acquired by Mr. Eddington in 1920, since which time he has occupied it as his home and used it as his office in connection with his business as manufacturer's agent for farm and dairy supplies. The garage in the rear has been used by him to store and display equipment incident to his business. In 1939 a sign was placed on the front lawn of this property, ''This property for lease for business purposes,'' and a similar sign appeared on these premises in February, 1942, both of which signs were removed as soon as Eddington was notified that they violated the building restriction. In October, 1943, a sign appeared in front that the premises would be used for a wholesale display room for the Kammer Casket Company, also defendant in the first case here. Thereupon the bill of complaint in the present suit was filed October 13, 1943.

Plaintiffs are not barred by laches from enforcing building restrictions against the defendants in this case, unless plaintiffs have acquiesced in other violations on property in the subdivision fronting on West Grand boulevard for such length of time and to such an extent that the character of the use of the

property in the subdivision fronting on West Grand boulevard has been changed from residential to commercial use without effective steps being taken to prevent the same. This will be discussed later.

The second suit (the Edwards case) involves the use of lots 398 and 399 fronting on West Grand boulevard in the same block with the Eddington lot. These lots are improved with a two-story double brick house owned by the defendant Gladys Edwards who purchased it in 1942. Counsel for plaintiffs, who is also the general counsel for the Improvement company, and who was sworn as a witness in the case, testified that from 1938 to 1942 there was a Neon sign in the window of these premises "Premier Beauty Shop." The record is plain that when this case was started this property had been used as a so-called beauty parlor for more than five years without anyone taking steps to prevent such use. After she purchased the property in 1942, Gladys Edwards at considerable expense converted the property into a convalescent home, doctors and nurses' registry for convalescent patients, and advertised such business in telephone and other directories. No action was taken to enforce the restriction against her until about a year later when the present bill of complaint was filed.

The two cases were tried in the circuit court simultaneously with three others involving property in these same two blocks fronting on West Grand boulevard in this subdivision. These three other cases were started in 1939, as follows: (1) the Doyle case, to restrain Doyle from using lot 405 for commercial purposes; (2) the Gurney case, to restrain Gurney from commercial use of lot 1; and (3) the Hilliker case, to restrain Hilliker from violating the restriction on lot 402 and part of lot 401. The trial court entered decrees dismissing the bills of

complaint in these three cases because of laches on the part of the respective plaintiffs bringing suit to restrain the violations there alleged, notwithstanding the fact that these cases were started in 1939 while the two cases here on appeal were not started until October, 1943.

The crucial issue in the present cases is whether plaintiffs' inaction and failure to take steps to enforce observance of the restriction against commercial use of properties in the two blocks in the subdivision fronting on West Grand boulevard, for a considerable length of time, bars them from obtaining the injunctive relief here sought against the defendants in the instant two cases. Has there been such a change in character as to the use of properties in the subdivision, fronting on West Grand boulevard, over such a length of time, acquiesced in by plaintiffs, to amount to laches and estoppel? As to the factual situation, the record supports the summarization as made by the trial court in his opinion from which we quote as follows:

"Frederick J. Eddington is the owner of a single residence known as 2415 West Grand boulevard and located on lot 392; and defendant Gladys Edwards is purchasing on contract from First Liquidating Corporation a double or duplex residence located on lot 398 and the west 20 feet of lot 399, LaSalle Gardens subdivision, located at 2435–2437 West Grand boulevard. * * *

"The Doyle property, consisting of a double house and garage, is located on lot 405 on the northwest corner of West Grand boulevard and 14th avenue. The house was built some 25 years ago and was designed to provide doctors' offices in the basement with a covered entrance to such offices leading from the 14th avenue side. The houses were occupied by private families and the basement offices seem to have been occupied through the years for

the most part by doctors, who made their residences in the easterly house above. The property was purchased by Mr. Doyle some 22 years ago who thereafter built a private garage on the rear of the property with driveways running from 14th avenue. This garage was thereafter enlarged and for many years was devoted to commercial use. It is now used as an automobile repair or bumping shop by a tenant who maintains a large automobile salesroom and repair shop located on the northwest corner of West Grand boulevard and 14th avenue.

"The Gurney property consists of a residence building on lot 1 located on the northeast corner of West Grand boulevard and Linwood avenue. For many years this property has housed an insurance office on the first floor and basement, with second floor used for residential purposes. Appropriate signs, advertising the insurance business, have been on the property. In addition, commercial billboards, leased to Walker & Company, have been erected on the rear portion of the lot facing Linwood avenue.

"The Hilliker property occupies lot 402, which is the fourth lot west of 14th avenue. It has been used for the past several years and is still used as an undertaking establishment and residence.

"The houses on the Doyle, Gurney and Hilliker properties have been well maintained. They have retained their residential characteristics externally except for the signs advertising the businesses conducted. At one time and for a short period the easterly side of the Doyle house was used by a costumer who rented costumes, dress clothes, et cetera, and so advertised. The garage in the rear of the Doyle property has been devoted to distinctly commercial use for several years.

"The use of these three properties here described would have undoubtedly been restrained had plaintiff in the respective suits not been guilty of laches to the extent that they were estopped in their efforts to prohibit uses which have been going on for years.

These violations undoubtedly constitute some waiver of the restrictions in contemplating the remaining instant cases.

"Another violation of restrictions might be cited in the use of the Frazier property (lot 19 located at the northwest corner of West Grand boulevard and LaSalle boulevard) as a funeral establishment. This property has also been well maintained and except for a large sign advertising the business has retained its external residential characteristics.

"A commercial signboard has been erected and maintained for several years on lot 3, which is the third lot east of Linwood avenue; and in addition to the above other Grand boulevard properties may have been used from time to time for commercial purposes, rooming houses, another undertaking establishment, et cetera.

"The Janisse property, a single residence on lot 10, appears to have been devoted in part to commercial use in the manufacture of ties for some years past. It is a substantial building, well maintained and occupied in part by Mr. Janisse and his family as their residence. The business there conducted has been advertised and at some times as many as 30 people were employed. It is not shown that such commercial use or its extent had ever been brought to the attention of the plaintiffs or the association, although at one time some investigation was made as to the use of the garage.

"The residence located on lot 12 appears to be used in part as a massage establishment known as Gilberg Institute. The duration of such use is not disclosed although it appears that such use has come to the attention of the association, which has made some effort by correspondence with the owner or occupant to terminate such use, which appears however still to continue.

"The Eddington property has always been used as a residence except that Mr. Eddington has conducted some business as a manufacturer's agent from his house, and it appears that the garage may

have been used from time to time as a storage space and for display of articles which he had for sale.

"The Edwards property (east side house), it appears, was used for some time as a beauty parlor, which was advertised as such by a sign on the premises. Mrs. Edwards testified that subsequent to her purchase of the property she evicted the tenants who occupied the easterly house, and that the house was then being used in part as a beauty parlor, although such use was denied by the tenants in the eviction proceeding. It appears that a beauty parlor was conducted in the premises, at least intermittently so far as external appearances are concerned, from a period from 1938 to 1942. Mr. Sanders testified on behalf of plaintiffs that in 1938 a Neon sign advertising the Premier Beauty Shop appeared on the premises; that he wrote letters to the tenant and owner of the property; that about a year or so later the sign came down and that he was advised that the premises were no longer used for business.

"Another violation that may be considered is the use of a garage on rear of lot 39 for commercial purposes. This building faces Linwood avenue north of the boulevard and has the appearance of a commercial building. It houses a display room and is the subject matter of another suit not yet disposed of. The use involved appears to have continued for several years. * * *

"It is significant that the subdivision is surrounded on the east, south and west sides by non-residential properties. 14th and Linwood avenues may be regarded as heavily travelled thoroughfares, the sides of which across from the subdivision are devoted to commercial use. The south side of West Grand boulevard between 14th and Linwood avenues while originally built as residential properties, has lost its character as such to the extent that possibly a majority of the single residences, double houses and terraces are now housing some forms of commercial enterprise. It is probably a fair assumption that Grand boulevard property east and west of the

subdivision no longer retains its residential character. It should possibly be noted in this connection that, in addition to the testimony of Messrs. Doyle, Gurney and Janisse, some 10 other owners of Grand boulevard property in the subdivision testified that they had no objection to a relinquishment of restrictions to permit the commercial use of property on the West Grand boulevard. One owner of West Grand boulevard property alone testified that he was interested in maintaining the residential restrictions. While Mr. Hilliker or Mr. Frazier did not testify it is a fair assumption that, because of the commercial use to which their properties are put, they have no objection to the commercial use of the other Grand boulevard properties. The Edwards property is two doors removed from the Hilliker property; and the owners on either side of the Eddington property testified that they had no objection to the intended commercial use of his property."

In addition to the foregoing, the evidence establishes that the upper part of the Doyle property on lot 405 had at various times been used for display of furniture with signs in front; that the garage at the rear was enlarged in 1926 to a building 40 x 40 feet, externally designed as a commercial building, and for some time has been used for a general auto garage repair business; the Gurney property on lot 1 has been used for 10 years as the location of the "Gurney Insurance Agency" with a large Neon advertising sign in front; the large commercial billboards on said property, leased to the Walker Sign Company, were erected in 1922; the Hilliker property on lots 401 and 402 has been occupied as the "Hilliker Funeral Home," with a large Neon sign on the front lawn, continuously since 1934; the Frazier property on lots 18 and 19, at the northwest corner of West Grand boulevard and LaSalle

boulevard, has been used as "Frazier Funeral Home" beginning about 1930, with a large Neon advertising sign on the front of the premises; a suit was started in 1939 to enjoin Frazier from such use, but subsequently dropped. The Janisse property on lot 10, in addition to being used commercially by the Century Tie Company to manufacture neckwear since 1934, has been used continuously since 1941 in the manufacture of automatic lubricators. One Doctor Mott testified he has his offices on lots 388 and 389, on the northeast corner of LaSalle and West Grand boulevard, has a sign on the building, has been conducting his practice there for approximately 10 years without anyone ever disturbing him or writing him or telling him he was violating any restrictions. There are 37 lots in the subdivision which front on West Grand boulevard. At least 9 of the 33 homes and 15 of the 37 lots in these two blocks of the subdivision which front on West Grand boulevard have been used in whole or in part for commercial purposes over varying periods of time for the last 20 years. We are unable to find in the record where any effectual attempt has been made by anyone to permanently enjoin the use of those properties for commercial purposes. In addition to evidence as to the commercial use hereinbefore referred to, there was other testimony that various other homes in the subdivision were used as rooming houses, and by physicians conducting practice from their homes, with signs in front.

The trial court entered decrees granting plaintiffs the injunctive relief against the defendants in these two cases as sought in their bills of complaint. We do not reach the same result. The record plainly establishes that the character of the use of the lots in the subdivision fronting on West Grand boulevard has changed from strictly residential purposes

to commercial use, and that this has been acquiesced in by plaintiffs for many years. Plaintiffs, by their inaction and acquiescence in the continuous violation of the residential building restriction over such a long period of time, are estopped from injunctive relief against the defendants in the cases before us. Equity does not require that the use of the Eddington and Edwards properties be now restricted solely to residential use when such a large proportion of the properties fronting on West Grand boulevard may continue to be used for business purposes. In fact, at least four of these properties, the Doyle, Hilliker, Frazier and Gurney places, are in commercial use after ineffectual proceedings had been started in court in an attempt to restrain such use, and later dropped. Violations of the restriction have been so generally acquiesced in, over so long a period of time, that equity will refuse to single out the Eddington and Edwards properties for strict enforcement of the restriction. The principles of equity would not be served by enjoining the defendant Eddington and the Casket Company from using the property at 2411 West Grand boulevard for the display of caskets, while other undertaking establishments have been allowed to use other properties in the same restricted area for commercial purposes for many years, and continue so to do. Nor would equity be served by preventing defendant Edwards from using her property for a convalescent home when it has been continuously used as a beauty parlor for at least five years. The residential character of properties in the subdivision fronting on West Grand boulevard cannot be restored by granting injunctive relief against the two properties here involved.

No benefit would result from a comparison of the many cases which have reached this court where the

enforcement of building restrictions has been sought. Each has been decided'with reference to the factual situation shown.

"Courts of equity in passing upon cases of this character grant or withhold injunctive relief depending upon the accomplishment of an equitable result in the light of all of the circumstances surrounding the particular case. *Putnam* v. *Ernst,* 232 Mich. 682." *Cherry* v. *Board of Home Missions of Reformed Church in United States,* 254 Mich. 496, 500.

"The equity court will not enforce the provisions in a deed restricting the use of the premises to residential purposes, where, since the dedication of the plat, the character of the locality has changed from a residential to a business section, and adjoining lots, originally containing the same restrictions, have been freed therefrom, and are now used for business purposes." *Windemere-Grand Improvement & Protective Ass'n* v. *American State Bank of Highland Park* (syllabus), 205 Mich. 539.

The decrees are set aside and decrees may be entered dismissing the bills of complaint, with costs to appellants.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, NORTH, and STARR, JJ., concurred.