KEYWELL v. NEWMAN.

1. COVENANTS—RESIDENTIAL USE—CHANGE OF AREA TO COMMERCIAL CHARACTER.

Equity will not enforce covenants restricting use of premises to residential purposes, where, since the restrictions were imposed, the character of the locality has changed from a residential to a business section, and adjoining lots, originally containing the same restrictions, have been freed therefrom, and are now used for business purposes or where parties seeking injunctive enforcement have estopped themselves by conduct or inaction.

2. SAME—INJUNCTION—REMODELING OF 4-FAMILY FLAT INTO MATERNITY HOSPITAL.

Injunction against remodeling and use of 4-family flat for maternity hospital was properly denied, where plaintiffs had permitted use of a number of other lots in 30-lot subdivision for various nonresidential uses and general area, zoned by city for commercial uses, is shown to have largely changed from residential to commercial in character.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted January 17, 1952. (Docket No. 74, Calendar No. 45,352.)  Decided March 6, 1952.

Bill by Henry C. Keywell and others against Delle A. Newman and others to restrain remodeling of

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 14 Am Jur, Covenants, Conditions and Restrictions §§ 295, 302 et seq.

[1, 2] Change of neighborhood in restricted district as affecting restrictive covenant.  54 ALR 812; 85 ALR 985; 103 ALR 734; 4 ALR2d 1111.

Acquiescence by purchaser of lot in restricted district in violations of restrictions as to some lots as waiver of right to insist upon it as to others.  46 ALR 372; 85 ALR 936.

Change of neighborhood or other conditions as ground of affirmative relief by cancelation of restrictive covenant.  88 ALR 405.

4-family flat into a maternity hospital. Harry Glick and wife intervene as parties plaintiff. Bill dismissed on merits. Intervening plaintiffs appeal. Affirmed.

*Ralph L. Seltzer,* for intervenors.

*Clark, Klein, Brucker & Waples* (*H. William Butler,* of counsel), for defendants.

DETHMERS, J. Plaintiffs sought to restrain defendants from remodeling and using as a maternity hospital their 4-family flat located on lot 22 and part of lot 23 in the Norton and Beardsley's subdivision, which is 2 blocks long, 205 feet deep, divided into lots numbered serially from 1 to 30, and lies on the north side of West Grand boulevard between Linwood and Wildemere avenues in the city of Detroit. The plat, recorded in 1889, contained no restrictions, but the lots became restricted to use for residence purposes only by virtue of provisions in conveyances in 1911.

In 1920 plaintiff Keywell bought lot 29 and parts of lots 28 and 30 and built a 42-family apartment thereon, violating the restriction as to front building line. In that year he also entered into an agreement with the adjoining owner of the east 40 feet of lot 30, permitting the construction of a supermarket thereon, which is now situated on said lot, as are other commercial establishments, including a tavern and dry cleaner. In 1946 Keywell and other lot owners joined in a consent decree allowing the use of lot 24 or 25 for a chiropractor's office, at which location a building known as "Northwestern Health Clinic" is now situated with a large sign in front of it advertising it as such; later they entered into another consent decree permitting a doctor's office to be maintained, as it now is, on lot 18. Further west

in the subdivision 2 funeral homes are operated. In 1935, in a suit for a declaratory decree as to whether the restrictions applied to 2 lots located between lots 1 and 14, Keywell and other lot owners entered into a consent decree which provided that the restrictions should no longer apply to lots 1 to 14, inclusive; the decree undertook to provide concerning lots 16 to 30, inclusive, not involved in the suit, that the restrictions still applied to them. The area, including the entire subdivision, is zoned by the city of Detroit for commercial use. Across the street from plaintiffs' property is a large gasoline station, and to the west of it, successively, a large apartment building, a church, additional apartments, the great Lee Plaza Hotel, and large school playgrounds. On the corner lot just east of the subdivision is an insurance office. The testimony of a realtor familiar with the area is that the character of the neighborhood has largely changed from residential to commercial. In *Harrigan* v. *Mulcare,* 313 Mich 594, the adjacent subdivision immediately to the east was before the Court and the entire area here in question was characterized by this Court as no longer residential and it was found that the commercial use of lots in the subdivision there in question had been acquiesced in for many years. Plaintiffs in that suit sought to enjoin the use of lots for a beauty parlor and for wholesale casket display rooms in violation, as alleged, of residential restrictions. In that case, in denying injunctive relief, we said:

"The record plainly establishes that the character of the use of the lots in the subdivision fronting on West Grand boulevard has changed from strictly residential purposes to commercial use, and that this has been acquiesced in by plaintiffs for many years. Plaintiffs, by their inaction and acquiescence in the continuous violation of the residential building restriction over such a long period of time, are

estopped from injunctive relief against the defendants in the cases before us. * * * Violations of the restriction have been so generally acquiesced in, over so long a period of time, that equity will refuse to single out the Eddington and Edwards properties for strict enforcement of the restriction. * * * The residential character of properties in the subdivision fronting on West Grand boulevard cannot be restored by granting injunctive relief against the 2 properties here involved. * * *

" 'The equity court will not enforce the provisions in a deed restricting the use of the premises to residential purposes, where, since the dedication of the plat, the character of the locality has changed from a residential to a business section, and adjoining lots, originally containing the same restrictions, have been freed therefrom, and are now used for business purposes.' *Windemere-Grand Improvement & Protective Ass'n* v. *American State Bank of Highland Park* (syllabus), 205 Mich 539."

The trial court, in its opinion denying plaintiffs relief, cited and relied upon decisions of this Court as follows: *Windemere-Grand Improvement & Protective Ass'n* v. *American State Bank of Highland Park,* 205 Mich 539, for the proposition that a court of equity will not enforce residential restrictions where, since the dedication of the plat, the character of the locality has changed from a residential to a business section and adjoining lots originally containing the same restrictions have been freed therefrom and are now used for business purposes; *Cherry* v. *Board of Home Missions of Reformed Church in United States,* 254 Mich 496, to the effect that injunctive relief will be denied in cases of this kind when to grant it would be inequitable or when those applying therefor have estopped themselves by their conduct or inaction; *Harrigan* v. *Mulcare, supra,* as holding that restrictions will not be enforced by the court on certain lots when plain-

tiffs have acquiesced in violations thereof on other lots in the subdivision for such a long period of time that the character of the area has become changed from residential to commercial without steps having been taken to prevent it.

We think the trial court was correct in its construction and application of the holdings in the mentioned cases to the facts in the case at bar and in decreeing dismissal of plaintiffs' bill of complaint accordingly.

Decree affirmed, with costs to defendants.

NORTH, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.